**STATE of Iowa ex rel. Leah Christen Lara, Appellee,**

v.

**Jamie LARA, Appellant.**

No. 91–1351.

Supreme Court of Iowa.

Feb. 17, 1993.

**720**

Bonnie J. Campbell, Atty. Gen., John Parmeter, Deputy Atty. Gen., Robert R. Huibregtse, Asst. Atty. Gen., and Rhonda Fitchett, Asst. County Atty., for appellee.

Peter J. Leehey of Trevino, Leehey & Schnurr, Fort Dodge, for appellant.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The question here is whether the child support obligation of a non-custodial parent should be reduced because that parent has substantial visitation with the child.

We believe the obligation should not be reduced. Accordingly, we vacate the court of appeals decision and affirm the district court ruling.

I. *Background facts and proceedings.* Respondent James Lara (Jamie) and Stephanie Lundberg (Stephanie) are the parents of Leah Christen Lara, born in June

1989. Jamie and Stephanie have never been married to each other.

From September 1990 through April 1991 Jamie voluntarily paid support to Stephanie for Leah. Stephanie had worked part-time at a hospital, earning $4.78 per hour, but voluntarily quit in August 1990. In addition, Stephanie received public assistance in the form of Aid to Dependent Children (ADC) from the Iowa Department of Human Services (DHS).

Two separate court actions occurred. In a paternity action, Jamie and Stephanie entered into a stipulation providing for joint custody of Leah, with Stephanie having primary physical care of the child. The stipulation also granted Jamie extremely generous visitation, such that Jamie actually has the child approximately fifty-four percent of the time. The court approved the stipulation and also found Jamie to be Leah's biological father.

In the present action, the State initiated an administrative proceeding against Jamie for support of Leah under Iowa Code chapter 252C (1989). An administrative order of DHS required Jamie to pay $242 per month to DHS in connection with the support of Leah. Jamie objected to the amount and requested that the matter be heard by the court. Iowa Code § 252C.3(3). DHS certified the matter to the district court. Iowa Code § 252C.4(1).

After hearing, the district court entered a decree ordering Jamie to pay child support to DHS in the amount of $239.75 per month for the future support of Leah after July 1, 1991. Iowa Code §§ 252C.4(4), 598.-21(4). The court arrived at this amount after imputing $340.03 per month to Stephanie, the average amount she could have earned at her job, and $974.61 net income per month to Jamie, and applying the child support guidelines as required by Iowa Code section 598.21(4) (Supp.1989). The court did not order Jamie to reimburse the State for past ADC benefits paid to Stephanie because it found the State had failed to carry its burden of proof as to that amount.

Jamie appealed, contending that the district court should have deviated from the guidelines because, under the paternity case stipulation and order, he has physical care of Leah in the way of visitation slightly more than half of the time. We transferred the case to the court of appeals.

The court of appeals found that because Jamie had Leah over half of the time and had contributed slightly more to her support than had Stephanie through ADC benefits, Jamie and Stephanie had effectively agreed to joint *physical* custody. Thus, the court of appeals treated the agreement as a split custody situation. Accordingly, that court imputed $340 per month to Stephanie as a noncustodial parent and $974.61 to Jamie as a custodial parent. Applying these figures to the child support guideline charts for one child, the court figured Stephanie's obligation in that situation would be $67.66 per month, which the court then subtracted from Jamie's obligation of $239.75 as a noncustodial parent. The court ordered Jamie to pay the rounded off difference of $172 per month for the benefit of Leah.

We granted the State's application for further review from that decision.

■ II. *Monthly child support obligation.* Our review of this equity proceeding is de novo. Iowa R.App.P. 4; *In re Marriage of Bergfeld*, 465 N.W.2d 865, 868 (Iowa 1991).

■ Our uniform child support guidelines were drafted to allow the custodial parent to receive the amount of support necessary to provide for the children living with that parent. *Gilley v. McCarthy*, 469 N.W.2d 666, 667 (Iowa 1991). We note that "[o]ne of the primary purposes of these uniform guidelines is to provide an efficient, equitable, and predictable method of determining the amount of child support." *Id.*

■ These guidelines create a "rebuttable presumption that the amount of child support which would result from the application of the guidelines ... is the correct amount of child support to be awarded." Iowa Code § 598.21(4)(a). However, a court may deviate from the amount of support required by the guidelines if the court finds such adjustment "necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case." Supreme Court Order in the Matter of Child Support Guidelines (December 31, 1990).

A. *Support continues during visitation.* The paternity case stipulation and order involving Jamie and Stephanie stated that they would share "joint custody" of Leah, with Stephanie having "primary physical custody," which we construe to mean primary physical care. The stipulation also gave Jamie "reasonable and liberal *visitation.*" (Emphasis added.) For the reasons that follow, we conclude that Jamie and Stephanie have, in fact, *not* agreed to joint physical custody, and that the time Leah spends with Jamie is visitation.

■ We first held in *In re Marriage of Glass*, 213 N.W.2d 668, 671 (Iowa 1973), and again later in *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976), that child support generally should not be suspended during periods of visitation with the noncustodial parent. This is because the custodial parent still must incur most of the expenses of maintaining a home for the parent and the children even when the children are absent. *Fleener*, 247 N.W.2d at 221; *Glass*, 213 N.W.2d at 671.

In the present case, Stephanie presumably must still maintain a home, clothes and necessities for Leah even when Leah is visiting Jamie. The record here reveals no special circumstances indicating support should be suspended during Leah's visitation with Jamie.

■ B. *Voluntarily reduced income.* A court is allowed to deviate from the child support guidelines only if it makes a written finding that the guidelines would be unjust or inappropriate in a given situation. Iowa Code § 598.21(4). Here, the trial court deviated slightly from the guidelines in favor of Jamie by imputing to Stephanie $340 per month, the average amount she earned from her part-time hos-

pital job.[1] The court found that she had voluntarily quit this job. Under *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991), and *In re Marriage of Bales*, 439 N.W.2d 228, 230 (Iowa App.1989), a court may figure child support under the guidelines by including or considering the amount by which a parent has voluntarily reduced his or her income. Therefore, we conclude the trial court properly considered the amount of Stephanie's voluntarily reduced income when applying the child support guideline charts.

C. *Child support and ADC benefits.* Stephanie is receiving ADC benefits for Leah while Jamie is protesting the amount of support he is obligated to pay under the guidelines back to DHS for the support of his child.

In *State ex rel. Cacek v. Cacek*, 484 N.W.2d 592 (Iowa 1992), a mother received ADC benefits for her four children. Only one of these children was fathered by the respondent in that case. In applying the one-child chart under the guidelines, we noted that the fact that the respondent's child was receiving ADC benefits "indicates a greater rather than a lesser need for [the child] to receive the amount of support to which he is entitled" under the guidelines. *Id.* at 594. Finding no evidence in the record indicating that respondent Cacek was unable to pay, we ordered him to pay the appropriate amount of support under the guidelines.

In *State ex rel. Department of Human Services v. Burt*, 469 N.W.2d 669 (Iowa 1991), finding no special circumstances, we did not deviate from the guidelines to account for the reasonable living expenses of the father involved, where the mother's only source of income was ADC benefits. In addition, we ordered the father to reimburse the State for public assistance monies advanced to the mother in the past.

Finally, the court of appeals has decided two recent cases particularly on point here.

In both *Iowa Department of Human Services ex rel. Greenhaw v. Stewart*, 435 N.W.2d 749 (Iowa App.1988), and *State ex rel. Shoemaker v. Fink*, 432 N.W.2d 700 (Iowa App.1988), the parents shared joint physical custody of their respective children. Therefore, each father had his children fifty percent of the time and thereby provided fifty percent of the children's support. Additionally, each mother received ADC benefits for her children, and the State brought actions against each father for reimbursement of past ADC benefits and for future support. *Stewart*, 435 N.W.2d at 750; *Fink*, 432 N.W.2d at 700. In both cases, the court of appeals stated that the fact each father had responsibility for his children half of the time and thus contributed substantially towards their support did not relieve him from further support. *Stewart*, 435 N.W.2d at 751; *Fink*, 432 N.W.2d at 701. In *Stewart*, the court of appeals affirmed the trial court's order fixing weekly support and requiring reimbursement for past ADC benefits. *Stewart*, 435 N.W.2d at 751. In *Fink*, the court remanded the case to the district court for an order fixing support. *Fink*, 432 N.W.2d at 701.

■ In the present case, Jamie has shown no special circumstances allowing us to deviate from the child support guidelines. In fact, he certainly appears able to pay the support amount ordered by the trial court.[2] The fact that Stephanie receives ADC benefits for Leah indicates Leah's greater need for support rather than a lesser need.

Furthermore, even if Jamie does have visitation with Leah fifty percent or more of the time, thereby already providing some support, the above authorities would still require him to pay monthly child support to partially reimburse the State for public assistance paid for his child. *See Stewart*, 435 N.W.2d 749; *Fink*, 432 N.W.2d 700. *Cf. Cacek*, 484 N.W.2d 592;

---

1. The State does not challenge this action by the trial court.

2. The trial court ordered Jamie to pay $239.75 in support per month. From September 1990 through April 1991, Jamie *voluntarily* paid

$3,158 in support, or an average of $451.14 per month. This is more than required under the guidelines, yet Jamie made no complaint during that time.

*Burt,* 469 N.W.2d 669. Therefore, we affirm the trial court's decree ordering Jamie to pay monthly child support of $239.75 as the trial court calculated under the child support guidelines.

III. *Disposition.* We conclude that even though Jamie may have substantial visitation with his child, he is not excused from further supporting her as ordered by the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.