STATE of Iowa, ex rel., Joshua SCHAAF, A Minor Child, Appellee,

v.

Randy C. JONES, Appellant.

No. 92–1797.

Court of Appeals of Iowa.

Feb. 25, 1994.

James W. Mailander of Mailander Law Office, Anita, for appellant.

Bonnie J. Campbell, Atty. Gen., John Parmeter, Sp. Asst. Atty. Gen., Mark Haverkamp, Asst. Atty. Gen., and Kay Sanders, Asst. County Atty., for appellee.

Considered by DONIELSON, P.J., HABHAB, J., and PETERSON, S.J.*

DONIELSON, Presiding Justice.

Deborah Fooken and Randy Jones are the parents of Joshua Schaaf, born June 2, 1982. Deborah and Randy never married. Randy asserts he had no knowledge he was Joshua's father. Deborah asserts Randy saw Joshua shortly after birth and said, "I suppose you will want some money from me." Deborah made no request for support then. Randy quit high school and joined the military.

In October 1988, Deborah wrote Randy asking him to relinquish his parental rights to Joshua so her husband could adopt the child. Randy responded by asking for proof of paternity. Deborah did not pursue the matter further. Randy asserts he believed he was not Joshua's father since the matter was dropped.

On April 4, 1991, the State filed a petition to establish paternity, support, and reimbursement of state and federal funds pursuant to chapter 252A of the Iowa Code. Paternity tests conclusively established that Randy is Joshua's father.

The parties submitted stipulated facts and written arguments to the district court. Deborah was twenty-five years old and the mother of four children. Deborah is a nurse but she suffers from a visual disability, multifocal choroiditis, which makes it difficult for her to work more than part-time. Deborah's sole income is from child support of $539 from her former husband and state assistance, since she quit her job six days before the scheduled hearing.

Randy was age twenty-seven and living in New Mexico. Randy and his wife have two children and were expecting their third child. Randy was in the Air Force where he worked as a ground equipment mechanic, but was released from the service because of cutbacks in staff. Randy's net monthly income was approximately $1246. The family has monthly expenses of approximately $1200. Randy's wife is not employed outside of the home. Randy denies having knowledge of his fatherhood of Joshua until after he had married and had two children.

On October 7, 1992, the district court filed its ruling. The district court rejected Randy's argument it should deviate from the guidelines based on his claim he didn't know he was Joshua's father and because of his present family obligation. The district court found Randy knew of the claim of his parenthood before his present marriage and resulting family but chose to ignore it. Based upon Randy's income and the child support guidelines, the district court ordered Randy to pay $321.50 per month child support beginning in May 1991. In addition, the district court ordered Randy to pay child support at rate of $150 per month from October 1988 through the date of filing the action (April 4, 1991).

* Senior judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

Randy appeals.

Our review of issues in equity is de novo. Iowa R.App.P. 4. We examine the entire record and adjudicate anew rights on the issues properly presented. *State ex rel. Nicholson v. Toftee,* 494 N.W.2d 694, 695 (Iowa 1993). We give weight to the findings of the district court, but are not bound by them. Iowa R.App.P. 14(f)(7).

## I. *Application of the Child Support Guidelines.*

■ Appellant first argues the district court should have deviated from the uniform child support guidelines because application of the guidelines would be inequitable to his current family. We disagree. "There shall be a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount to be awarded." Iowa Code § 598.21(4)(a) (1993). In order to vary from the guidelines, the court must make a written finding that application of the guidelines would be unjust or inappropriate under specific criteria. *In re Marriage of Powell,* 474 N.W.2d 531, 533 (Iowa 1991). Deviation from the uniform application of the guidelines is discouraged. *Toftee,* 494 N.W.2d at 697. "In the absence of special circumstances, the reasonable living expenses of the noncustodial parent do not provide a ground for departing from the guidelines." *State ex rel. Dep't of Human Serv. v. Burt,* 469 N.W.2d 669, 670 (Iowa 1991). This is because "the guidelines already take into account the reasonable living expenses of the noncustodial parent." *Id.* The district court did find application of the guidelines, "because of [appellant's] family obligation and limited income ... would in fact be a severe injustice." Yet because of the financial situation of both parties, the court found application of the guidelines from the time this action was filed was the most equitable solution. We agree with the court "there is no good answer to this problem," and find application of the child support guidelines from the filing of this action appropriate under the special circumstances of this case.

Appellant also argues application of the guidelines is inequitable because he did not know about Joshua when he started a family. We agree with the district court concerning appellant's knowledge of the claim of his parenthood. The letter received in October 1988 clearly disclosed Deborah believed Randy to be Joshua's father. Accordingly, we affirm the district court's determination to apply the guidelines and to assess a reduced amount for the period from the date of the 1988 letter to the date this action was filed.

## II. *Establishing Deborah's Earning Capacity.*

■ Appellant next argues the district court erred in not determining Deborah's earning capacity before applying the guidelines. We agree. Deborah terminated her employment just before the scheduled hearing date. "In setting an award of child support, it is appropriate to consider the earning capacity of the parents." *In re Marriage of Drury,* 475 N.W.2d 668, 672 (Iowa App.1991); *In re Marriage of Byall,* 353 N.W.2d 103, 107 (Iowa App.1984). The record does not reveal the reason Deborah's employment ended. Nor does it reveal what she earned while employed. A court may consider the amount by which a parent voluntarily reduced his or her income when computing child support under the guidelines. *State ex rel. Lara v. Lara,* 495 N.W.2d 719, 721 (Iowa 1993); *In re Marriage of Powell,* 474 N.W.2d 531, 534 (Iowa 1991). We recognize neither party is in a good position to provide for Joshua because of obligations to other children. Deborah has an eye condition which may limit her ability to work. We find, however, the district court erred in not determining Deborah's earning capacity, even if limited, and imputing that amount to her in calculating Randy's child support obligation according to the guidelines. We therefore reverse the determination of the district court and remand this case to the district court for such determination and recalculation of Randy's child support obligation. We do not retain jurisdiction.

## III. *Judgment for Past Support.*

■ Appellant finally asserts the district court should not have assessed any past child

support obligation because he did not know about Joshua and had no opportunity to develop a relationship with him. We disagree. As we noted earlier, Randy had notice of the claim he was Joshua's father at least as early as 1988 when he received the letter asking him to relinquish his parental rights. There is some evidence he may have known soon after Joshua's birth. Under the circumstances of this case, we do not find the district court's judgment inequitable. The court clearly recognized the poor financial situation of both parents. It determined $150 per month from 1988 until this action was filed was an equitable amount. After our review of the record, we agree and affirm the district court.

Costs of this appeal shall be divided evenly between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**