**In re the MARRIAGE OF Wendy S. THEDE n/k/a Wendy S. Chistolini and Michael K. Thede,**

**Upon the Petition of Wendy S. Thede n/k/a Wendy S. Chistolini, Petitioner–Appellant,**

**And Concerning Michael K. Thede, Respondent–Appellee.**

No. 96–0242.

Court of Appeals of Iowa.

May 29, 1997.

Robert L. Rausch of Rausch Law Firm, Waterloo, for appellant.

Eric W. Johnson of Beecher, Rathert, Roberts, Field, Walker & Morris, P.C., Waterloo, for appellee.

Heard by HABHAB, C.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

Petitioner-appellant Wendy S. Thede n/k/a Wendy S. Chistolini challenges the order modifying the child support provisions of the decree dissolving her marriage to respondent-appellee Michael K. Thede and ordering that she pay child support and medical and college expenses for her children. She claims (1) the trial court should have considered the parties' net worth and deviated from the child support guidelines; (2) the trial court in computing the child support failed to deduct her total federal tax liability, one-half of her standard federal tax deduction, and the state taxes paid to the State of Massachusetts; (3) the trial court should have determined she be allowed to claim two of the

children as dependents for tax purposes; (4) the trial court should not have ordered she pay a percentage of her eldest son's college expenses; (5) she should not have been ordered to pay retroactive child support and medical and college expenses; and (6) she should be awarded appellate attorney fees. We affirm.

■ Our review is de novo. *See* Iowa R.App. P. 4.

The parties' marriage was dissolved in January 1989. The three children born to the marriage (Steven, born March 14, 1976; Barry, born April 8, 1979; and Aaron, born November 4, 1980) were placed in the parties' joint custody. Michael was granted custody of the children during the school months and Wendy during the remaining months. They were each ordered to provide support during the time the children were in their custody.

Shortly after the dissolution, Wendy moved to Connecticut and then to Massachusetts, and the children did not spend more than three consecutive weeks in her custody.

In December 1994, Michael filed a petition to modify the dissolution decree seeking primary physical care of the children. He further contended Wendy should pay child support and medical and college expenses for the children.

At the time of the modification hearing, the parties were both in their late thirties. Wendy worked as a convention service manager in Springfield, Massachusetts. She had an annual income of about $30,000. She contended her net monthly income was $1633. She contended her net worth had decreased since the dissolution from approximately $20,000 to $13,000. Michael, a farmer, claimed a net monthly income of $3024.86. His net worth increased since the dissolution from approximately $100,000 to $260,000.

On December 12, 1995, the trial court entered an order finding a substantial change in circumstances and modifying the decree. The trial court modified the decree to grant Michael primary physical care. It ordered Wendy to pay child support and determined by applying the child support guidelines she should pay $475 per month retroactively to February 1, 1995. Additionally, Wendy was ordered to pay medical and college expenses. Wendy was further ordered to reimburse Michael for part of what he had incurred for the children's medical expenses and Steven's college expenses. The court provided Michael could claim the personal tax exemptions for each of the children.

Both Michael and Wendy filed rule 179(b) motions requesting the court to reconsider its ruling. After reconsideration, the trial court determined the monthly child support and division of expenses did not reflect use of the 1995 tax rates and the actual costs of medical insurance. The court accepted Michael's calculations of the parties' net incomes. It found Michael's net monthly income was $3024.86 and Wendy's was $1933.16. It ordered the following changes: (1) Wendy should pay child support in the amount of $564.48 per month retroactive to February 1, 1995; (2) Wendy should continue paying support after the children's majority, until all accrued obligations were paid; (3) Wendy should pay forty percent of all medical expenses and deductibles; (4) Wendy and Michael should pay forty percent and sixty percent, respectively, of the remaining two-thirds of college expenses; and (5) Wendy should reimburse Michael $2884 for incurred medical and college expenses. Wendy appeals the financial provisions of the modification.

■ The first question is whether the trial court should have deviated from the child support guidelines because Michael had a net worth greater than Wendy's. There is a rebuttable presumption child support determined by the application of the guidelines is correct. Iowa Code § 598.21(4); *In re Marriage of Gehl*, 486 N.W.2d 284, 286 (Iowa 1992). A court cannot depart from the guidelines without a written finding application of the guidelines would be unjust under the special circumstances of the case. Iowa Code § 598.21(4)(a); *Gehl*, 486 N.W.2d at 286. The court then has judicial discretion to consider factors that make application of the guidelines unjustified. *See id.*; *State ex rel. Cacek v. Cacek*, 484 N.W.2d 592, 593 (Iowa 1992); *In re Marriage of Keopke*, 483 N.W.2d 612, 613 (Iowa App.1992); *In re*

*Marriage of Miller,* 475 N.W.2d 675, 678 (Iowa App.1991). However, deviation from the uniform application of the child support guidelines is discouraged. *See State ex rel. Nicholson v. Toftee,* 494 N.W.2d 694, 697 (Iowa 1993); *State ex rel. Schaaf v. Jones,* 515 N.W.2d 568, 570 (Iowa App.1994).

■ The question is whether the failure to consider Michael's net worth would be so unfair to Wendy as to justify a departure from the guidelines. Certain factors, including net worth, can justify departure from the guidelines. *See In re Marriage of Lalone,* 469 N.W.2d 695, 697 (Iowa 1991). On our de novo review, we find the trial court did not abuse its discretion in not deviating from the guidelines. Michael is the custodial parent and he makes and has made substantial contributions to his children's support. A large portion of his net worth was accumulated during a period when Wendy made no contribution to the children's financial support. Michael as a farmer relies on his assets to assist him in producing income. There is no showing he has not accurately reported his income. There is no reason, upon a review of this record, why the fact Michael's net worth is more substantial than Wendy's would justify a departure from the guidelines. *See In re Marriage of Cossel,* 487 N.W.2d 679, 682 (Iowa App.1992) (where this court rejected argument that a farmer's financial statement, not his income, should be used to fix child support). We affirm the trial court on this issue.

■ Wendy's next contention is the trial court did not correctly determine her net income for purposes of applying the child support guidelines. She specifically advances the trial court did not properly consider the allocation of the standard federal tax deduction between her and her current husband and did not properly compute the state income taxes she paid in Massachusetts.

■ We agree that in applying the guidelines a fair allocation of deductions should be made between spouses and a deduction should be allowed for state income tax due on earnings, no matter what the state of residence. As we said in *Miller,* we recognize to achieve the fairness and uniformity contemplated by the guidelines, income tax should be a figure that reflects actual ultimate income tax liability. *Miller,* 475 N.W.2d at 679.

■ Both parties sought to establish net income for purposes of applying the child support guidelines by submitting worksheets containing their calculations of the income tax liabilities. Michael submitted copies of his tax returns. Wendy did not. The question is whether the trial court abused its discretion in fixing net incomes for purposes of applying the guidelines. *Gehl,* 486 N.W.2d at 287. We cannot say under this record the trial court did. Without copies of Wendy's tax returns, the record before us is insufficient to assess the accuracy of the calculations submitted by the parties. We affirm the trial court on this issue.

■ Wendy next advances she should be allocated the tax exemptions for two of the children. Tax exemptions are considered with child support; the allocation of the tax exemptions will have an effect on the income tax liabilities of both parties and their resulting net income for child support purposes. The record is not sufficient for us to address this issue. *See also In re Marriage of Axmear,* 529 N.W.2d 304, 306 (Iowa App.1995).

■ Wendy next contends she should not have been required to contribute to her children's college expenses. Unmarried children who are under the age of twenty-two years and are full-time students can be entitled to support under a dissolution decree. *See Miller,* 475 N.W.2d at 678; *In re Marriage of Linberg,* 462 N.W.2d 698, 701 (Iowa App.1990); *In re Marriage of Byall,* 353 N.W.2d 103, 107 (Iowa App.1984). We affirm on this issue.

■ Wendy further contends her obligation to pay child support should not have been made retroactive. The trial court has discretion to order child support to be paid from the date of the filing of the petition. *In re Marriage of Shepherd,* 429 N.W.2d 145, 147 (Iowa 1988). This is a broad discretion. *State ex rel. Hunter v. Hunter,* 501 N.W.2d

533, 535–36 (Iowa 1993); *see also State DSS ex rel. Welter v. Kitner,* 512 N.W.2d 309, 313 (Iowa App.1993). Wendy has made no financial contribution to her children's welfare since the dissolution other than providing for them during a very short visitation. She paid nothing during the pendency of the matter. The trial court did not abuse its discretion in making the obligation retroactive.

Wendy requests attorney fees on appeal. *See* Iowa Code § 598.36. There is no basis for her request.

**AFFIRMED.**