In re the MARRIAGE OF Marlys Gwinn HOKSBERGEN and Allen Dale Hoksbergen.

Upon the Petition of

Marlys Gwinn Hoksbergen, Petitioner–Appellee,

And Concerning

Allen Dale Hoksbergen, Respondent–Appellant.

No. 97–1901.

Court of Appeals of Iowa.

Oct. 29, 1998.

M.H. Pothoven of Pothoven, Blomgren & Stravers, Oskaloosa, for appellant.

. Jeffrey A. Smith of Heslinga, Heslinga, Dixon & Smith, Oskaloosa, for appellee.

Considered by SACKETT, C.J., and HUITINK and STREIT, JJ.

## PER CURIAM.

Allen Hoksbergen appeals the district court ruling on his petition for modification of the child support provisions of the parties' dissolution decree. Allen contends the district court: (1) should have found his income substantially and permanently reduced; and (2) should have deviated from the child support guidelines because his children avoided contact with him. We affirm as modified.

Allen and Marlys Hoksbergen were divorced in April 1994 after a seventeen-year marriage. The district court ordered Allen to pay $1062 monthly child support for the parties' six children. In 1997, Allen filed a petition for modification contending Marlys's income had increased, his own income had decreased, and three of the parties' children had attained the age of majority and graduated from high school. At the modification hearing, Allen further contended his child support obligation should be reduced because the remaining minor children refuse visitation or other contact with him.

The district court found Allen's income had changed little since the dissolution and Allen had failed to establish a change in his income which would be permanent or continuous. The court decreased Allen's monthly child support obligation to $803.88 based on an increase in Marlys's income and a decrease in the number of children supported.

■ Allen first contends the trial court should have found his income had been substantially and permanently reduced. We review de novo. *In re Marriage of Bolick*, 539 N.W.2d 357, 359 (Iowa 1995). We give weight to the findings of the trial court, but are not bound by them. *In re Marriage of Raue*, 552 N.W.2d 904, 906 (Iowa App.1996).

The dissolution court computed Allen's current income for support purposes at $26,-802 or $2233 a month. Marlys's income was computed at $157 a week or $680 a month. Allen's support was fixed at $1062 a month. Allen was granted the farm real estate, but was ordered to pay Marlys $54,420 in installments due July 1, 1994 and July 1, 1995.

At the time of the modification hearing, Allen, a dairy farmer, showed a net farm loss of $7830 in 1996. In addition, he had a capital gain of $6855 from the sale of dairy cows and machinery and $2340 interest. The district court found Allen's income for child support purposes to be $2233 a month.

No specific challenge is made to the figures used by Allen on his tax return to report his income. We note, however, he has elected to deduct $17,116 for GDS and ADS assets placed in service before 1998. This is not explained, but we find it to be excess depreciation and amortize it over about seven years, thereby increasing Allen's annual income by $14,500. We, therefore, find Allen's annual income to be $15,865, that is, $2340 interest *plus* $6855 capital gains *minus* $7830 farm loss *plus* excess depreciation $14,500. Allen owed no income taxes; consequently, the child support figure is applied to this amount. We modify to order Allen pay child support of $507.65 per month.

Allen also argues the court should have deviated from the child support guidelines because his minor children have refused to have anything to do with him. The court has judicial discretion to consider factors that make application of the guidelines unjustified. *In re Marriage of Thede*, 568 N.W.2d 59, 61 (Iowa App.1997).

Allen asserts his children refuse to participate in court-ordered visitation or allow him to participate in their activities. We have held a child's repudiation of a noncustodial parent may relieve that parent from paying college support. *In re Marriage of Baker*, 485 N.W.2d 860, 862–63 (Iowa App.1992). College support is not child support. *See In re Marriage of Lieberman*, 426 N.W.2d 683, 685 (Iowa App.1988). The withholding of visitation does not stop an obligation for child support. *See State ex rel. Wagner v. Wagner*, 480 N.W.2d 883, 885 (Iowa 1992).

Allen further advances we should consider his children's actions toward him and vary the amount calculated under the child support guidelines to avoid "substantial injustice" or "to do justice ... under the special circumstances of the case" citing criteria allowing variance listed in the child support guidelines.

The district court did not find the children's behavior justified a departure from the guidelines. We review for an abuse of discretion. Other actions such as contempt or modification of visitation or physical care

are available to Allen to enforce these rights should Marlys not begin to recognize her responsibilities as joint custodian. We affirm on this issue.

In doing so, we note our displeasure with Marlys's failure to encourage the children's relationship with their father and her failure to include him in notices of school events. Marlys and Allen were named joint custodians in the April 1994 decree.

Joint custody is defined in Iowa Code section 598.1(3) as follows:

> *"Joint custody"* or *"joint legal custody"* means an award of custody of a minor child to both parents under which both parents have rights and responsibilities toward the child and under which neither parent has rights superior to those of the other parent. The court may award physical care to one parent only.

Iowa Code § 598.1(3) (1997); *In re Marriage of Bolin*, 336 N.W.2d 441, 443 (Iowa 1983).

The rights and responsibilities of joint custodians were enumerated in *In re Marriage of Westcott*, 471 N.W.2d 73 (Iowa App.1991), as follows:

> Joint custody gives both parents not only rights to the child but at least as important it gives responsibilities. The responsibilities include the obligation to allow the child significant contact with the other parent. Rights and responsibilities of legal custodians of a child include but are not limited to equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.
>
> The responsibilities also include the obligation to put personal biases aside and to work with the children's other parent to arrive at a schedule that gives due consideration to the education and social needs of the children.... The parent having physical care will be the one receiving information on school events, getting conference slips and report cards. These should be shared with the other parent. Except for emergency situations, the parent then having physical care has a responsibility of communicating to the other parent the need to make the decision and making the

necessary information available. Both parents have an obligation to personally discuss these problems with each other. While no one can expect medical and school personnel to serve as referees, we can and do expect the parents to meet with them jointly and we expect each parent to focus on the children's problem and help the personnel arrive at a solution that is in the children's best interests. Both parents should recognize the need for flexibility of visitation scheduling. Joint custodians should be mature adults who can put aside their differences and operate in their children's best interests.

*Id.* at 75–76.

We award no attorney fees. Costs are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**