In re the MARRIAGE OF Lorraine JONES and Thomas M. Jones, Jr.

Upon the Petition of Lorraine Jones, Appellant,

and

Concerning Thomas M. Jones, Jr., Appellee.

No. 01–0815.

Supreme Court of Iowa.

Nov. 14, 2002.

J. Bryan Schulte of Schulte, Hahn & Swanson, Burlington, for appellant.

Thomas T. Skewes of Johnson & Skewes, Fort Madison, for appellee.

TERNUS, Justice.

The appellee, Thomas Jones, Jr., was granted a twenty-five percent credit against his child support obligation under our child support guidelines based on the fact that his court-ordered visitation exceeded 127 days per year. The appellant, Lorraine Jones, appealed the dissolution decree to challenge the credit, claiming the court-ordered visitation actually totaled less than 128 days and alleging Thomas had not actually exercised his visitation rights.

The court of appeals affirmed. Upon further review, we agree that the district court judgment should be affirmed, but we disagree with the court of appeals with respect to the basis for affirmance. Therefore, we vacate the decision of the court of appeals and affirm the district court judgment.

I. *Background Facts and Proceedings.*

Lorraine Jones sought dissolution of her marriage to Thomas Jones. Custody of their two children, as well as child support and visitation, were in dispute. On the day of trial, November 13, 2000, the parties engaged in extensive negotiations. Eventually, they dictated the terms of an agreement into the record "for the court's approval." In relevant part, the parties agreed that they would share joint legal custody of the children and Lorraine would be granted their physical care. Thomas was to be allowed liberal visitation, but in the event "the parties cannot agree as to what constitutes liberal access," then Thomas was to "be guaranteed a minimum" amount of visitation. A complex rotation of physical care and visitation was then dictated into the record. Thomas's attorney stated that "with the amount of visitation that [Thomas] is entitled to, he will be receiving a credit under the new set of child support guidelines." She stated they believed it would "at least" be in "the 25 percent category," but the parties would "have to sit down and calculate how many overnights [Thomas] has."

The court then heard testimony from Lorraine to prove the elements required for a dissolution. In response to questioning, she acknowledged her understanding "that because [she had] agreed to provide extensive visitation privileges to [her] husband that there [would] be some credit against child support." Upon completion of the hearing, the court approved the settlement dictated into the record "as the terms of the divorce" and directed counsel "to prepare a dissolution decree in accordance with the record created here today."

For reasons that are not apparent, the parties' attorneys failed to prepare the decree. Instead, on April 6, 2001, Lorraine filed a pleading entitled "Application for Order Scheduling Hearing and Entry of Decree of Dissolution of Marriage." She asserted that upon calculation of the overnight visits Thomas would be entitled to under the visitation provisions of the stipulation, she had determined he did not qualify for the twenty-five percent child support credit. She further asserted that since the November hearing, Thomas had advised her that he would no longer be exercising visitation.

The same judge who had presided over the dissolution hearing heard Lorraine's application. At that hearing the parties

disagreed as to whether they had actually stipulated to the child support credit. They also disagreed on the number of overnights Thomas would have under the backup schedule that had been read into the record at the prior hearing. In addition, Lorraine testified that since the November hearing Thomas had visited his children only twice and had had no visitation with the children since December. The parties disagreed on the reasons Thomas had not exercised his visitation.

In ruling on the application, the court observed that the issue was what the decree provided, so events occurring since the November hearing—when the court announced its ruling—were not relevant. Specifically, the court stated that Thomas's "lack of visitation since November 13 may constitute a ground for modification as recognized by the child support guidelines order, but that issue is not before the court at present." The court also found that it was clear a twenty-five percent credit was anticipated and agreed to by the parties at the earlier hearing. The court again ordered the attorneys to prepare a decree consistent with the court's oral pronouncements. A decree was subsequently entered that provided in relevant part:

> The parties shall be awarded the joint legal custody of the minor children of the parties ... with the Petitioner being awarded the physical care of said minor children and the Respondent being awarded liberal access to the children, and, if the parties cannot agree what constitutes liberal access, then the Respondent shall be guaranteed a minimum of the following....

Lorraine appealed, challenging the child support credit. Her appeal was transferred to the court of appeals, where that court found dispositive the stipulation that preceded the dissolution decree:

We conclude that Lorraine and Thomas reached a binding stipulation regarding visitation and the child support credit. Lorraine had no legal right to repudiate this stipulation.

Accordingly, the court of appeals affirmed the district court judgment. Although we think the court of appeals' affirmance of the district court was appropriate, we disagree with the basis for its ruling. Therefore, we vacate the court of appeals' decision and affirm the district court judgment for the reasons that follow.

## II. *Scope of Review.*

■ Our review of dissolution-of-marriage cases is de novo. *In re Marriage of Geil,* 509 N.W.2d 738, 740 (Iowa 1993). We examine the entire record and adjudicate anew the rights of the parties on issues that are properly preserved: *In re Marriage of Smith,* 573 N.W.2d 924, 926 (Iowa 1998). Although we are not bound by the trial court's findings of fact, we give weight to them, especially when considering credibility of witnesses. Iowa R.App. P. 6.14(6)(*g*).

## III. *Issues on Appeal.*

Lorraine contends the court of appeals' conclusion that she had no legal right to repudiate the stipulation resulted in an abdication of the court's responsibility to consider whether the stipulation was in the best interests of the children. She argues the stipulation was contrary to law because it provided Thomas with a reduction in child support without court-ordered extraordinary visitation and without a showing of any other circumstances permitting a deviation from the amount required by the child support guidelines. In addition, she continues to assert the district court should have considered Thomas's failure to exercise visitation and whether, based upon this fact, the stipulation was fair,

equitable, and in the best interests of the children. Finally, she requests attorney fees.

## IV. *Discussion.*

A. *Child support guidelines.* The Iowa Supreme Court has adopted uniform child support guidelines and criteria. Iowa Ct. R. 9.1. "The purpose of the guidelines is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." *Id.* 9.3.

■■ In ordering child support, the court must look to the amount specified in these guidelines. *Id.* 9.4. There is a rebuttable presumption that child support determined by application of the guidelines is correct. *In re Marriage of Gehl,* 486 N.W.2d 284, 286 (Iowa 1992); Iowa Code § 598.21(4)(*a*) (1999); Iowa Ct. R. 9.4. The amount suggested in the guidelines may, however, "be adjusted upward or downward if the court finds an adjustment necessary to provide for the needs of the children and do justice between the parties under the special circumstances of the case." *State ex rel. Reaves v. Kappmeyer,* 514 N.W.2d 101, 104 (Iowa 1994). Deviation from the uniform application of the child support guidelines is, however, discouraged. *In re Marriage of Thede,* 568 N.W.2d 59, 62 (Iowa Ct.App.1997).

Effective August 1, 2000, the Supreme Court amended the guidelines to provide, for the first time, a credit to a noncustodial parent's child support obligation when that parent's court-ordered visitation exceeds certain parameters. In pertinent part, the amended guidelines provide:

If the noncustodial parent's court-ordered visitation exceeds 127 days per year, the noncustodial parent shall receive a credit to the guidelines amount of child support in accordance with the following table:

| Days | Credit |
| --- | --- |
| 128–147 | 25% |
| 148–166 | 30% |
| 167 or more | 35% |

For the purposes of this credit, "days" means overnights spent caring for the child. Failure to exercise court-ordered visitation may be a basis for modification. Iowa·Ct. R. 9.7(2). The adjustment permitted by this provision recognizes the increased expense to a noncustodial parent who exercises extraordinary visitation. *Guillot v. Munn,* 756 So.2d 290, 299 (La. 2000). In addition, the incentive of a reduction in child support may have the effect of promoting the involvement of both parents in the upbringing of their children, a generally desirable circumstance. *See generally In re Marriage of Ruden,* 509 N.W.2d 494, 496 (Iowa Ct.App.1993) ("A child should be assured the opportunity for the maximum continuing physical and emotional contact with *both* parents.").

■■ B. *Effect of stipulation.* Because there appears to be some confusion with respect to the effect of the parties' stipulation in this case, we briefly discuss the role of a stipulation in a dissolution proceeding. A stipulation and settlement in a dissolution proceeding is a contract between the parties. *In re Marriage of Lawson,* 409 N.W.2d 181, 182 (Iowa 1987). Therefore, it is enforceable like any other contract, and a party may not withdraw or repudiate the stipulation prior to entry of judgment by the court. *In re Marriage of Ask,* 551 N.W.2d 643, 646 (Iowa 1996).

■■ Nonetheless, the parties' stipulation is not binding on the court, as the court has the responsibility to determine " 'whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues.' " *Id.*

(citation omitted). Accordingly, if the stipulation is unfair or contrary to law, the court has the authority to reject the stipulation. *Id.* Moreover, a stipulation will not be incorporated in the decree unless the court "determines the settlement will not adversely affect the best interests of the parties' children." *In re Marriage of Udelhoffen*, 538 N.W.2d 308, 310 (Iowa Ct.App.1995). Thus, we agree with Lorraine that the court of appeals erred in concluding that the decree should be affirmed merely because she had agreed to the stipulation providing the basis for the trial court's decision.

■■■ In fact, once the court enters a decree, the stipulation, as a practical matter, has no further effect. *See Bowman v. Bennett*, 250 N.W.2d 47, 50 (Iowa 1977). The decree, not the stipulation, determines what rights the parties have. *Id.; In re Marriage of Von Glan*, 525 N.W.2d 427, 430 (Iowa Ct.App.1994). Therefore, in ascertaining the rights of the parties after final judgment, it is the intent of the district court that is relevant, not the intent of the parties. *In re Marriage of Knott*, 331 N.W.2d 135, 137 (Iowa 1983).

■■■ *C. Application of law to facts.* As noted above, Lorraine contends the stipulation was contrary to law because it provided Thomas with a reduction in child support without court-ordered extraordinary visitation. Based on the fact that the district court approved the parties' stipulation at the November hearing and adopted it as the basis for the court's dissolution decree, the fairness of the stipulation itself is no longer of any importance. What we must focus on is whether the *decree*, as announced in November and reduced to writing in April, is contrary to law because it allowed a reduction in child support

without a corresponding order of extraordinary visitation. The court made it clear at the second hearing that it understood the parties to have agreed to a twenty-five percent reduction in child support based on liberal visitation granted to Thomas. The court indicated it was quite aware at the time it made its ruling that the exact number of days of visitation in any given year might vary, but nonetheless concluded that it reasonably expected Thomas to have 128 days of visitation, if not more, each year. While it may have been less ambiguous for the court to have specifically decreed that Thomas was to receive at least 128 overnight visits with his children, the court certainly left no doubts at the second hearing that this was the court's intent.

Lorraine contends the guidelines establish a bright-line rule that requires a court to specify a schedule that awards at least 128 days of visitation each year rather than to rely on a speculative schedule or a schedule that does not award the noncustodial parent extraordinary visitation annually. While we agree that a child support credit cannot be allowed in the absence of a court order entitling the noncustodial parent to at least 128 days of overnight visitation, we disagree that the decree at issue here did not satisfy that requirement. The district court is at liberty to leave the precise timing of the visitation to the parties, as the court did in this case. The fact that the backup schedule might not always result in 128 or more days of visitation does not violate the child support guidelines, where, as here, the court has ordered "liberal access" with the clear understanding that such access will result in at least 128 overnight visits each year.[1] Thus, we reject

---

1. Thomas's visitation under the backup schedule is subject to many variables, including

whether the parent having physical care takes the children on an extended out-of-town vaca-

Lorraine's argument that the trial court erred in granting the credit.

■ We also reject Lorraine's argument that the court-ordered visitation and child support were not in the best interests of the children because Thomas failed to exercise visitation. Thomas's failure to exercise visitation occurred *after* the trial court made its decision. Therefore, the district court correctly ruled that Lorraine's remedy lies in an application to modify the decree. *See* Iowa Ct. R. 9.7(2) ("Failure to exercise court-ordered visitation may be a basis for modification.").

### V.   *Summary and Disposition.*

We affirm the district court's award of a twenty-five percent credit against Thomas's child support obligation. Our ruling is without prejudice to Lorraine's ability to seek a modification of the court's order based on Thomas's failure to exercise visitation exceeding 127 days annually. We deny Lorraine's request for attorney fees. *See In re Marriage of O'Brien*, 565 N.W.2d 619, 623 (Iowa 1997) (discussing factors supporting an award of appellate attorney fees).

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

tion during the summer, whether Thomas has Marine Corps Reserve commitments during a scheduled visitation, and whether Lorraine travels out of town and leaves the children with Thomas during her absence, as she was required by the decree to do. Given the many variables inherent in the backup schedule, it is impossible to calculate with any degree of precision the exact number of overnight visits Thomas would have with his children in any particular year if the only visitation exercised was that set forth in the schedule.