# IN THE COURT OF APPEALS OF IOWA

No. 14-1271
Filed May 20, 2015

IN RE THE MARRIAGE OF BRANDON PAUL VAN ZETTEN
AND ASHLEY ANN VAN ZETTEN

Upon the Petition of
BRANDON PAUL VAN ZETTEN,
        Petitioner-Appellant,

And Concerning
ASHLEY ANN VAN ZETTEN,
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


Brandon Van Zetten challenges the district court's finding he was in default of the parties' dissolution decree. **AFFIRMED.**


Kodi A. Brotherson of Becker & Brotherson Law Office, Sac City, and Leslie Babich of Babich Goldman, P.C., Des Moines for appellant.

Mark R. Hinshaw of the Law Offices of Mark R. Hinshaw, West Des Moines, for appellee.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

This appeal involves the interpretation of a dissolution decree. Ashley Ann Van Zetten and Brandon Van Zatten were married on October 14, 2006, and divorced by stipulated decree on May 22, 2013. As part of the property division in the dissolution decree, Ashley was awarded "her original engagement ring." On February 7, 2014, Ashley filed an application for rule to show cause, alleging Brandon failed to comply with a number of requirements of the dissolution decree, including that he failed to return her original engagement ring. Following an evidentiary hearing, the district court found Brandon was in default of the decree's order that he return the original ring, but that the default was not willful, and did not amount to contempt. The court ordered Brandon "to return to Ashley . . . the original setting with the 2.1 carat princess cut contested diamond intact" within thirty days.

On appeal, Brandon spends much time explaining why the district court's interpretation of the stipulated decree was contrary to Brandon's intent in entering the stipulated decree. But Brandon's intent is irrelevant. *See In re Marriage of Morris*, 810 N.W.2d 880, 886 n.2 (Iowa 2012).

> "A stipulation and settlement in a dissolution proceeding is a contract between the parties." *In re Marriage of Jones*, 653 N.W.2d 589, 593 (Iowa 2002). The parties' stipulation, however,
>> is not binding on the court, as the court has the responsibility to determine "'whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues.'" Accordingly, if the stipulation is unfair or contrary to law, the court has the authority to reject the stipulation.
> *Id.* at 593–94 (quoting *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996)). Consequently, once the court enters a decree adopting the stipulation, "[t]he decree, not the stipulation,

determines what rights the parties have." *Id.* at 594 (citing *Bowman v. Bennett*, 250 N.W.2d 47, 50 (Iowa 1977)). "Therefore, in ascertaining the rights of the parties after final judgment, it is the intent of the district court that is relevant, not the intent of the parties." *Id.*

*Morris*, 810 N.W.2d at 886. "A dissolution of marriage decree is susceptible to interpretation on the same basis as other instruments, the determinative factor being the intent of the dissolution court as gathered from the language of the decree and the context in which it was rendered." *Sieren v. Bauman*, 436 N.W.2d 43, 46 (Iowa 1989).

At the hearing on Ashley's application for rule to show cause, the evidence showed the parties were engaged in early December 2005. When he proposed, Brandon gave Ashley a platinum ring with several diamonds on the side and a 2.1 carat princess cut center diamond. However, after the engagement, Ashley learned the ring had been purchased for another woman. Ashley thereafter wore a different ring in its stead. Shortly before the wedding ceremony, the center diamond was placed in a setting that became Brandon's wedding band. Brandon asserts the phrase "the original engagement ring" means the platinum ring without the center diamond. Ashley asserts the term means the platinum ring with the center diamond Brandon gave her when he proposed to her in December 2006.

The district court agreed with Ashley:

> The meaning of the disputed Decree term therefore governs the outcome of the parties' disagreement concerning what piece of jewelry the contested diamond should be part of. The court gives Brandon the benefit of the doubt and concludes that the meaning of the undefined word "original" in the phrase "original engagement ring" in the Decree is indefinite and uncertain. The court must therefore resolve this ambiguity by deciding the common and

ordinary meaning of "original" and then using it in conjunction with the words "engagement ring."

The court will give the word original its common and ordinary meaning by referring to a dictionary. *See, e.g.*, *Pierce v. Farm Bureau Mut. Ins. Co.*, 548 N.W.2d 551, 555 (Iowa 1996) (stating courts can resort to dictionaries to supply the common and ordinary meaning of undefined terms). The common and ordinary meaning of original is "the initial, not secondary, derivative, or imitative" form of something, or something that is "the first instance or source." Merriam Webster's Collegiate Dictionary 820 (10th ed. 1998). "Original" as used in the phrase "original engagement ring" in the Decree therefore reasonably means the initial or first form of the engagement ring: The original setting with the contested diamond intact, which is the way the ring was presented to Ashley by Brandon when he asked her to marry him.

Brandon's failure to return Ashley's original engagement ring under his misunderstanding of what the word "original" in the phrase "original engagement ring" in the Decree means is not willful, deliberate, or intentional under this record. However, the Decree imposes upon him a duty to return Ashley's original engagement ring to her under the common and ordinary meaning of the word original and he has not done so.

Finding no reason to set aside the district court's interpretation, we affirm.

**AFFIRMED.**