# IN THE COURT OF APPEALS OF IOWA

No. 14-1300
Filed August 5, 2015

IN RE THE MARRIAGE OF JOHN ANDREW HARTUNG
AND BETTY JEAN HARTUNG

Upon the Petition of
JOHN ANDREW HARTUNG,
        Petitioner-Appellee,

And Concerning
BETTY JEAN HARTUNG,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.


        Betty Hartung appeals the support and economic provisions of the district

court's decree of dissolution.  **AFFIRMED AS MODIFIED.**


        Gary D. McKenrick of Cartee & McKenrick, P.C., Davenport, for appellant.

        Daniel L. Bray and Chad A. Kepros of Bray & Klockau, P.L.C., Iowa City,

for appellee.


        Considered by Tabor, P.J., and Mullins and McDonald, JJ.

**MULLINS, J.**

Betty Hartung appeals from the economic provisions of the decree dissolving her marriage to John Hartung. Betty claims the district court's award of spousal support was inequitably low, the court's valuation of John's business interest resulted in an inequitable division of the property, and she also asks for appellate attorney fees. Upon our review, we modify the district court's award of spousal support, affirm the property distribution, and award appellate attorney fees.

## I. BACKGROUND FACTS AND PROCEEDINGS

John and Betty were married in 1998. No children were born during the marriage, but they each have two children from prior marriages. John was born in 1953 and has some health problems including chronic back pain, bone spurs in his right heal, arthritis in both hands, and dental problems. Betty was born in 1951 and also has some health problems concerning her hearing, spurs in her neck, osteoporosis, arthritis, depression, and she is a breast cancer survivor.

John is a co-owner of Champion Coatings (Champion), which is a sandblasting and painting contractor that primarily works for municipalities. John's annual gross income is approximately $300,000, which is derived from his salary, and Champion distributions and profits. During the marriage, Betty held occasional employment. She has an associate's degree and is licensed to sell real estate.

John filed a petition for dissolution of marriage in February 2013. Betty filed an answer with a request for temporary support and attorney fees. The

court entered a temporary order requiring John to pay the parties' household expenses and $1000 per month in temporary spousal support.

The trial was held on April 14 and 15, 2014, and the court entered its decree dissolving the marriage on April 29. The court granted Betty $3500 in monthly spousal support until she "attains her sixty-seventh birthday, remarries, or dies, whichever first occurs." The court found John's one-third ownership in Champion had a fair market value of $315,000. Based on the length of the parties' marriage, the court found that an equal distribution of the assets and liabilities was equitable. Both parties filed posttrial Iowa Rule of Civil Procedure 1.904(a) motions to enlarge or amend the court's order. The court denied Betty's request, except for her request to return to her maiden name. The court granted John's request to distribute certain assets.

Betty now appeals the district court's spousal support award and its valuation of John's interest in his business.

## II. SCOPE AND STANDARD OF REVIEW

We review dissolution cases de novo. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005). We examine the entire record and adjudicate the rights of the parties anew on the issues that are properly preserved. *In re Marriage of Jones*, 653 N.W.2d 589, 592 (Iowa 2002). However, we accord the trial court considerable latitude in making an award and will disturb its ruling only where there has been a failure to do equity. *Okland*, 699 N.W.2d at 263. We give weight to the trial court's fact findings, especially when considering the

credibility of witnesses, although we are not bound by them. *In re Marriage of Duggan*, 659 N.W.2d 556, 559 (Iowa 2003).

## III. DISCUSSION

### A. Spousal Support

Betty claims the district court's calculation of her spousal support award was inequitably low. In support of her claim, she points to the parties' disparate annual incomes and her extensive health problems preventing her from working.

Although our review of the district court's award of alimony is de novo, we give that court considerable latitude in making this determination based on the criteria in Iowa Code section 598.21(1) (2013). *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). We will disturb that determination only when there has been a failure to do equity. *Id.*

There is no absolute right to spousal support. *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996) (*superseded by statute on other grounds as recognized by In re Marriage of Shanks*, 758 N.W.2d 506, 510–11 (Iowa 2008)). Rather, whether it is awarded depends on the circumstances of each particular case. *Id.* Iowa Code section 598.21A(1)[1] sets forth the criteria for determining

---

[1] Iowa Code section 598.21A(1) lists the following factors to be considered by the court in setting spousal support payments:
        a. The length of the marriage.
        b. The age and physical and emotional health of the parties.
        c. The distribution of property made pursuant to section 598.21.
        d. The educational level of each party at the time of marriage and at the time the action is commenced.
        e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time

spousal support. This includes the length of the marriage, the age and physical and emotional health of the parties, the property distribution, the earning capacity of each party, and any other factors the court may determine to be relevant. Iowa Code § 598.21A(1).

We consider the property distribution and spousal support provisions of a decree together to determine their sufficiency. *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009). Spousal support is justified when the distribution of the marital assets does not equalize the inequities and economic disadvantages suffered in marriage by the party seeking the support, and there is a need for support. *Id.* While the property distribution is designed to sort out property interests acquired in the past, spousal support is made in contemplation of the parties' future earnings and is modifiable. *Id.* at 59–60. The spouse receiving spousal support is expected to earn up to their capacity. *See In re Marriage of Wegner*, 434 N.W.2d 397, 399 (Iowa 1988).

In granting Betty $3500 in monthly spousal support, the district court reasoned:

---

and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
g. The tax consequences to each party.
h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
i. The provisions of an antenuptial agreement.
j. Other factors the court may determine to be relevant in an individual case.

John states he would like to retire in the next couple years as he feels his health will not allow him to continue active employment. John works as a crew supervisor and trainer. Apparently, he climbs towers to work on sand blasting and painting them. He states this is a physically demanding job and his age and accumulated injuries will make it hard, if not impossible, for him to continue for a long time. John's social security statement shows that if he retires at age 66, his expected benefit will be $2,014 per month.

Betty is not currently employed. In the past, she has worked in retail sales but only briefly. She most often would separate from employment due to personality conflicts with co-workers. Betty states she has a talent for interior design. However, she has not been gainfully employed outside the household for any substantial length of time. The Court does find that she is capable of full-time employment. Betty's social security statement shows that if she retires at age 66, her benefit will be $1,300 per month.

We have considered the above section 598.21A(1) factors and have reviewed the record de novo. The parties' were married for sixteen years. Both parties are approximately sixty years old and complain of health problems. John claims he plans on retiring from the business in a few years due his health problems. Betty has the education and qualifications to obtain employment and "earn up to her capacity." *Wegner*, 434 N.W.2d at 399. The district court found Betty was capable of full-time employment. The district court found an equal distribution of the parties' assets was an equal split. Even if Betty were gainfully employed at her earning capacity, the difference in their gross incomes would exceed $250,000 a year. We find the district court's spousal support calculation was not equitable. We find spousal support should have been set at $4500 per month. We find all other terms of the spousal support equitable.

## B. Business Valuation

Betty claims the district court's valuation of John's business interest resulted in an inequitable division in the parties' property.

In dividing marital property, a court determines what is fair and equitable based upon the particular circumstances of the parties. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). "Although an equal division is not required, it is generally recognized that equality is often most equitable." *Id.* We uphold a district court's valuation of property when it is accompanied by supporting credibility findings or corroborating evidence. *See In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct. App. 1999).

At trial, both parties presented expert witnesses who testified about conflicting valuation methods. The district court reconciled the apparent conflict and reasoned:

> Extensive testimony was taken from expert witnesses for the [John] and [Betty] as to the value of Champion Coatings. The fair market value of this asset appears to be the principal point of contention at trial. Both parties engaged experts to value John's ownership in Champion Coatings, Inc. John is an equal one-third partner in Champion, along with his two other owners who formed this company in 2000. [John's] expert witness used an asset value approach to the value of the company and [Betty's] expert witness used an income value approach to the value of the company. The fair market value of Champion Coatings Inc. is that price which would be agreed upon by a willing seller and a willing buyer, neither of whom is under compulsion to buy or sell and each having equal knowledge as to the matters involved. *Maytag Co. v. Partridge*, 210 N.W.2d 584, 587 (Iowa 1973).
> The two appraisers, each looking at the same set of facts, came up with greatly divergent valuations. [John's] appraiser, using an asset valued approach, valued John's interest in Champion Coatings Inc. at $279,392. [Betty's] expert, using an income value approach, valued the John's interest in Champion Coatings Inc. at $786,000.

The Court must decide the facts from the evidence. . . .

The Court finds that the asset value approach is the more reasonable approach between the two valuation methodologies due to the nature of the business in which Champion Coatings is engaged. It is a business with a competition that has a low bar of entry. Further, the customers generally are government agencies which are required by law to accept the lowest bid. Therefore, there is very little guaranteed repeat business which would give rise to the use of the income valuation method. Without a base of loyal return customers, and the predictable income stream a business could rely upon from them year to year, there is little that can be counted upon to be sold as an ongoing value of Champion Coatings other than the physical assets of the company.

Further, the Court believes the income value approach as calculated by Betty's witness includes assets not properly includable in the valuation for Champion. Mainly, the opinion of value of Betty's witness included the value of contracted work which has not been started or completed. John's expert testified that such work is not included in a business valuation according to generally accepted accounting principles.

However, the Court is equally concerned that John's expert's opinion of value is flawed insofar [as] it understates the true value of Champion because the method used by John's expert assumed the physical assets of the company were fairly valued at the value shown on the company depreciation schedules. Since the company chose [to] use what is known as §179 accelerated depreciation in preparation of the company income tax returns, this allows the assets, particularly newly purchased assets, to be fully depreciated in the year of purchase and shown in the company depreciation schedule to have no residual value. Such a method of determining the fair market value of physical assets defies common sense.

While it is perfectly legal for Champion Coatings to make use of aggressive depreciation via §179, this method does not result in an adequate determination of fair market value for each asset of the company. Since the value of the assets is at the crux of an asset valuation approach, this error in calculation understates John's interest in Champion to the extent §179 was used to reduce assets for a zero worth for tax purposes. The parties agree that the equipment has some residual value. In reviewing the testimony of the parties, and the testimony of the experts for both sides, the Court believes John Hartung's one-third ownership in Champion Coatings Inc. has a fair market value of $315,000.

Upon review of the record in this case, we conclude the value assigned to Champion by the district court is within the permissible range of the evidence, and we affirm.

### C.    Appellate Attorney Fees

Betty asks for an award of appellate attorney fees.  Appellate attorney fees are not awarded as a matter of right, but rather rest in this court's discretion.  Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993).  Since Betty prevailed on one issue in her appeal, we award her appellate attorney fees in the amount of $5000.

## VI.    CONCLUSION

Upon our de novo review, we modify the district court's award of spousal support to $4500 per month, affirm all other terms of spousal support, and affirm the valuation of John's interest in Champion.  We award Betty appellate attorney fees in the amount of $5000.  Each party shall be responsible for one-half the court costs.

**AFFIRMED AS MODIFIED.**