# IN THE COURT OF APPEALS OF IOWA

No. 15-1527
Filed September 28, 2016

IN RE THE MARRIAGE OF LYNN MARIE LARSEN
AND ROGER WAYNE LARSEN

Upon the Petition of
**LYNN MARIE LARSEN,**
Petitioner-Appellee,

**And Concerning
ROGER WAYNE LARSEN,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Story County, Timothy J. Finn,
Judge.

Roger Wayne Larsen appeals various economic provisions of the decree
dissolving his marriage to Lynn Marie Larsen. **AFFIRMED.**

Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant.

Nicole S. Facio of Newbrough Law Firm, L.L.P., Ames, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Roger Wayne Larsen appeals certain economic provisions of the decree dissolving his marriage to Lynn Marie Larsen: (1) the allocation of the income tax exemptions between the parties; (2) the $1136 equalization payment awarded to Lynn; (3) the distribution of the marital property; and (4) the adoption of the support provision from the partial stipulation for the decree. On our de novo review, we affirm.

## I. Background Facts and Proceedings

Lynn and Roger were married in November 1995. The parties have three children. The petition for dissolution was filed in August 2014. In October 2014, a temporary order concerning child support was entered. A two-day trial commenced on April 29, 2015. By the end of the day on April 30, 2015, the parties submitted a partial stipulation for the decree, which the court approved in all respects. In the partial stipulation, which noted the parties were both employed and self-supporting, the parties agreed to the following relevant matters: (1) Lynn would have physical care of the minor children and Roger would receive liberal visitation; (2) Roger would pay certain sums in child support, and his separation from service in the military would not constitute grounds for modification; and (3) Lynn would provide health insurance and dental coverage for the children.

In the dissolution decree, the court also resolved certain disputed matters between the parties, including the allocation of tax exemptions, the distribution of the parties' marital assets, and an equalization payment from Roger to Lynn for money Lynn paid for the children's dental expenses for which Roger received a

reimbursement check from the parties' dental insurance. Following entry of the dissolution decree, Roger appealed.

## II.      Standard and Scope of Review

We review cases tried in equity, such as dissolution cases, de novo. Iowa R. App. P. 6.907; *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). Prior cases, though helpful, have little precedential value because we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We accord the trial court considerable latitude in making factual determinations and will disturb the ruling only when there has been a failure to do equity. *Gust*, 858 N.W.2d at 406.

## III.      Analysis

Roger challenges four economic provisions of the dissolution decree. In matters of property distribution, we are guided by Iowa Code section 598.21 (2013). The parties in a dissolution action "are entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of O'Rourke*, 547 N.W.2d 864, 865 (Iowa Ct. App. 1996). Iowa law does not require an equal division, but rather, "what is fair and equitable in each circumstance." *In re Marriage of Campbell*, 623 N.W.2d 585, 586 (Iowa Ct. App. 2001). "Equitable distributions require flexibility and concrete rules of distribution may frustrate the court's goal of obtaining equitable results." *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997). Thus, "it is inherent in the court's

equitable powers, to make appropriate adjustments, according to the unique facts of each case." *Id.*

### A.    Income Tax

In the dissolution decree, the district court determined Lynn was entitled to claim a filing status as the head of household as well as claim the income tax exemption for one of the parties' children while Roger was entitled to claim the income tax exemption for the parties' other two children.  On appeal, Roger contends this arrangement inequitably shifts the tax burden to him.  He requests that he be allowed to claim all three children because Lynn receives a larger tax exemption by claiming the head of household filing status.

Iowa rules provide the "[h]ead of household filing status shall be assigned if a parent is the custodial parent of one or more of the mutual children of the parents."  Iowa Ct. R. 9.6(1).  Lynn was therefore entitled the head of household filing status.  The rules further provide the general rule that "[t]he custodial parent shall be assigned one additional dependent exemption for each mutual child of the parents."  Iowa Ct. R. 9.6(5).  The district court may award the tax exemption to a noncustodial parent, however, "to achieve an equitable resolution of the economic issues presented."  *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005) (citation omitted).  Such an award "may be appropriate when it would 'free up more money for the dependent's care.'"  *Id.* (citation omitted).

Roger contends being allowed to claim all three children would reduce his taxable income by approximately $12,000, while Lynn already receives a credit

as head of the household in excess of that amount.[1]  Roger concludes being awarded the tax credits would free up more of his income for the children; but the same remains true for Lynn.  On our de novo review, we find no inequity in the court's division of the income tax exemptions between the parties.

## B.     Equalization Payment

In the dissolution decree, the district court ordered Roger to pay Lynn $1136 "for equalization of money she paid for the children's dental expenses for which Roger received a check from the parties' dental insurance."  Roger does not deny he received this check and kept the proceeds.  Instead, he claims he was entitled to keep this money as an offset for $1884 he paid to the children's college savings accounts during the pendency of this case.

However, the parties' payment of medical expenses was governed by the temporary support order entered in October 2014.  This order required Lynn and Roger to "split any uncovered medical expenses equally on the children."  It is undisputed that Lynn covered this expense in its entirety, Roger made no contribution toward this expense, and Roger retained the reimbursement check from the insurance company.  We find the district court's order complied with the temporary support order in place and find no reason to depart from the holding of the district court.

---

[1] Lynn notes a $12,000 reduction would actually raise Roger's child support obligation for the three children; thus, without a corresponding increase in child support, the adjustment proposed by Roger would only result in Lynn incurring a greater tax burden, leaving less money to be used for the care of the children.

### C.    Property Distribution

The district court made the following distribution of the parties' real estate: (1) Roger was awarded the home he resided in—valued by the court at $75,305 in net value—with $40,000 deemed to be set off to Roger as his "inherited" property and the remaining $35,305 as joint marital property; (2) the second home was to be sold, with the first $35,505[2] to be paid to Lynn to offset the property Roger retained, the next $10,000 to be paid to Lynn to offset money she had paid on the home, and the rest to be divided evenly.

Roger challenges this distribution, arguing his inheritance was actually $56,775. In the calculations Lynn provided to the court, she valued the gifts and inheritances received by Roger at $40,061.97. At trial, Roger explained the discrepancy in Lynn's valuation by indicating she did not see $16,000 in deposits. Lynn notes the district court also characterized Roger's $20,000 coin collection as purchased with inherited property, which raises the amount the court attributed as inherited property to a total of $60,000. This was despite Roger's testimony at trial that the coins were purchased with marital funds.

In response, Roger notes Lynn withdrew $20,000 from the marital account post-separation to offset Roger's possession of the coin collection, but the district court failed to consider this sum. Lynn counters she withdrew the sum and spent it on the children, the house, utilities, clothing, food, medical expenses, and car repairs during the course of this litigation. Lynn provided an accounting for these expenditures to the district court. Lynn further notes she paid $15,500 in

---

[2] We note what appears to be a typographical error resulting in a discrepancy between the finding of $35,305 in marital property and the award of $35,505. Neither party appealed or requested correction of those numbers, and we decline to do so sua sponte.

mortgage payments and taxes on the second home, for which the district court credited her only $10,000. Finally, Lynn notes the $20,000 withdrawal occurred in May 2014, and the parties continued to jointly deplete the money remaining in the account, using said sums toward household expenses.

Finally, Roger requests $5500 "to make up for the difference in the disparate values of the personal property of Roger and Lynn." Lynn counters she is responsible for $7000 in credit card debt that was not credited by the court.

Ultimately, when accounting for the $56,775 Roger identified as inherited property (for which the court credited $60,000 as inherited property between the home and the coins), the $20,000 Lynn withdrew, the approximate $15,500 Lynn spent on mortgage payments and property tax payments (for which the court credited $10,000), the $5500 Roger contends Lynn received more in personal property, and the $7000 Lynn claims she accumulated in credit card debt, the monetary difference in the award between the parties is approximately $10,000. Lynn accounted for this amount as money spent on the children and other necessities.[3] Upon our de novo review, we conclude the district court equitably[4] distributed the parties' property and affirm.

### D. Child Support

In the partial stipulation, the parties agreed:

> [Roger] shall pay to [Lynn] the sum of $1400.00 per month for the support of the [three] minor children. Support shall be reduced to $1150.00 per months for two children. Support shall be reduced to $800.00 per month for one child. This support level is based upon

---

[3] Roger also testified he spent approximately $15,000 of the parties' marital funds on furniture for his home. Lynn also noted Roger claimed all three children in his 2014 taxes, receiving $6700 in refunds.

[4] An equitable award need not be equal. *See Campbell*, 623 N.W.2d at 586.

[Roger's] combined income from the [Iowa Department of Transportation] and the [Iowa Air Force National Guard]. [Roger's] separation of service from the military shall not be grounds for a modification.

Roger claims the district court should not have adopted this provision, as it "illegally binds the amount of child support at its current amount." Roger contends he is entitled to seek modification of the child support in the event there is a material change in circumstances and a departure from the military could constitute such a basis.

Lynn counters the provision was included because, at the time the parties entered into the partial stipulation, Roger had expressed his intention to leave the military that same year. She argues the provision was included to expressly provide that his purported imminent departure from the military had been contemplated by the parties and thus could not constitute a change in circumstances.

As an initial matter,[5] we note Roger did not object to the inclusion of this term at trial or following trial. *See* Iowa R. Civ. P. 1.904(2). Thus, there is no record for this court to review regarding the meaning of this clause or the purpose of its inclusion. We further note Roger has, in fact, not left his employment with the military, and thus his objection is premised upon a future, hypothetical development in circumstances.

A stipulation in a dissolution proceeding "is enforceable like any other contract . . . prior to entry of judgment by the court." *In re Marriage of Jones*, 653 N.W.2d 589, 593 (Iowa 2002). "Nonetheless, the parties' stipulation is not

---

[5] In her brief, Lynn argues this claim was not preserved for appeal.

binding on the court, as the court has the responsibility to determine 'whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues.'" *Id.* (citation omitted). Here, the district court considered and approved the partial stipulation in its decree, and it is the decree that determines the rights of the parties. *See id.* at 594. We agree with Lynn that the provision does not preclude Roger from seeking a modification of his child support obligation in the event of a material change in circumstances. Instead, the partial stipulation—as adopted by the court—acknowledges the child support award contemplated Roger's likely departure from the military at the time child support was set. We find the stipulation, as agreed to by the parties and adopted by the court, does not adversely affect the best interests of the children, *see id.* ("Moreover, a stipulation will not be incorporated in the decree unless the court 'determines the settlement will not adversely affect the best interests of the parties' children.'" (citation omitted)), and we affirm.

### E. Attorney Fees

Lynn requests $3500 in appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in this court's sole discretion." *Okland*, 699 N.W.2d at 270. In determining whether to award attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* Having considered these factors, we determine Roger shall pay $1500 of Lynn's appellate attorney fees. Costs shall be assessed to Roger.

**AFFIRMED.**