**IN THE COURT OF APPEALS OF IOWA**

No. 22-1847
Filed April 10, 2024

**IN RE THE MARRIAGE OF MONICA A. FICHTER
AND CLINTON M. FICHTER**

**Upon the Petition of
MONICA A. FICHTER,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning
CLINTON M. FICHTER,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Pottawattamie County, James S. Heckerman, Judge.

        A husband appeals the economic provisions of the parties' dissolution decree and the wife cross-appeals on the issue of spousal support. **AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

        Drew H. Kouris, Council Bluffs, for appellant/cross-appellee.

        J. Joseph Narmi, Council Bluffs, for appellee/cross-appellant.

        Considered by Bower, C.J., and Schumacher and Langholz, JJ.

**SCHUMACHER, Judge.**

Clinton Fichter appeals the economic provisions of the parties' dissolution decree and Monica Fichter cross-appeals on the issue of spousal support and requests appellate attorney fees. We affirm on the issues of property division, child support, and spousal support, with the exception that we eliminate the requirement on future modifications by Clinton concerning his income. We deny Monica's request for appellate attorney fees. Accordingly, we affirm the appeal as modified and affirm on the cross-appeal.

## I.    Background Facts & Proceedings

This is an appeal of an original dissolution action which follows a contentious fifteen months of litigation and a somewhat unusual procedural path. Clinton and Monica were married in 2005. They have four children but the welfare of only three of those children, born in 2006, 2008, and 2011, are affected by these proceedings. Monica filed a petition for dissolution of marriage in September 2021. On the day of trial, the parties agreed to joint legal custody and joint physical care of the children. They could not agree on the economic provisions related to their dissolution, including property division, spousal support, and child support.

Clinton is an attorney. He owns and operates Polychronic, LLC, doing business as Fichter Municipal Services and Law. He is a member of Small City Resource Institute, which is registered as a non-profit organization.[1] He has an ownership interest in A-Town Capital. He also serves as the city attorney for Avoca. Throughout much of the marriage, Monica was not employed outside of

---

[1] The only two members of the non-profit organization were Clinton and his mother.

the home. She later began operating a daycare, which was originally owned by the parties, subsequently made part of the non-profit organization for a period of time, and then later again became a separate entity.

James Watson, an attorney and certified public accountant, was retained to review the parties' financial condition. At the dissolution hearing held in June 2022, Watson testified he did not receive all of the financial information requested about the non-profit organization. He stated the organization was worth between $242,000 to $450,000. Watson opined there was a "gray area" concerning the charitable purpose of the organization. In 2021, the non-profit organization had gross income of $330,681.58. From January 2020 to December 2021, Clinton was paid $95,328.85.[2] His salary for 2020 was $41,002.10, but Watson testified Clinton earned closer to $90,000 per year. From the daycare portion of the non-profit organization, Monica was paid $15,520.43.

After Watson's testimony, the district court had a discussion with the parties and counsel.[3] Following an approximate hour-long break, the parties entered into a stipulation, which was read into the record:

> Mr. Fichter's income was imputed to 75,000 per year and Monica's income was imputed to 15,000 per year. That equated to $848.25 per month in child support. . . .
> . . .
> The—Mr. Fichter will be awarded the marital home. The marital home will be refinanced and the refinance value will be immediately paid 100 percent over to Monica Fichter. That is to

---

[2] Clinton's mother is the sole member of Municipal Administrative Services, LLC, and was paid $120,944.26 between April 2020 and December 2021.
[3] Although we do not have a transcript of this discussion, during a hearing on a post-trial motion, the court stated the discussion, following Watson's testimony, was about the court's concerns of the irregularities with respect to the profits and taxes of the corporations.

> offset a $75,000 equitable payment, with the balance due in two years.
>
> Mr. Fichter will be paying Monica $1500 per month in spousal support. That spousal support will be for 60 months, or five years.
>
> . . .
>
> And Monica will be awarded the passenger van and has agreed to pay off the note against that van; however, documentation has to be provided to us before that will happen.

The parties agreed Clinton would be awarded his interest in Small City Resource Institute, A-Town Capital, and Polychronic, while Monica would continue to run her daycare.

The district court issued a dissolution decree on June 30. The decree stated, "Based upon the information before the Court and in consultation with the parties and counsel, the parties stipulated to the following agreement." The court imputed income to Clinton of $75,000 per year and to Monica of $15,000 per year. The court ordered Clinton to pay child support of $848.25 per month for the three minor children. Clinton was also ordered to pay rehabilitative spousal support of $1500 per month for sixty months. The parties were awarded marital assets as set out in the stipulation, with Clinton required to pay Monica $75,000.[4]

Almost immediately after the entry of the decree, Clinton's attorney withdrew and his current attorney appeared, although Clinton continued to file some motions on his own.

Monica filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), stating the dissolution decree did not account for the parties' boat and trailer or a bank account. Clinton also filed a rule 1.904(2) motion, asserting the court imputed

---

[4] Clinton was ordered to refinance the house. He was ordered to pay $50,000 when he refinanced and the remaining $25,000 within two years.

too much income to him. He also noted Monica had obtained a new job, and this should be considered. Clinton asked for a recalculation of the property division, child support, and spousal support. In addition, Clinton filed a motion for a new trial on the economic provisions of the dissolution decree, claiming he felt pressured to agree to the stipulation and he never actually agreed to the terms of the stipulation. Both parties resisted the other party's motions.

The court ruled the boat and trailer should be awarded to Clinton, while the bank account should be evenly divided. The court denied the request for a partial new trial. The court denied Clinton's request to present additional evidence.[5] The court awarded the marital residence to Monica, but stated Clinton could redeem the home by paying Monica $35,000.[6] The court set a hearing on the issue of child support and spousal support in light of Monica's recent employment.

A hearing was held on September 12. Monica testified that she recently became employed as a preschool teacher at a local school with an income of $44,266 per year. As a condition of her employment, she is required to complete some college classes and has tuition expenses. Monica closed her daycare. In light of the new evidence, the court determined Clinton should pay child support of $714.95 per month for the three children. The court reduced the amount but not the duration of the spousal support award and ordered Clinton to pay spousal support of $500 per month for sixty months. And the court ordered that future

---

[5] The court denied Clinton's offer of Exhibits RR, TT, UU, PP, WW, XX, YY, and ZZ, ruling they "were not available for trial on June 27th."
[6] The court ruled the remainder of the equitable payment in the property division should remain as set out in the original dissolution decree.

income of Clinton would have to be reviewed by Watson concerning any future modification. Clinton appealed the district court's decision.

## II. Standard of Review

We review dissolution of marriage decrees in equity. *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 50 (Iowa 1999). In equitable actions, our review is de novo. Iowa R. App. P. 6.907. "In such cases, '[w]e examine the entire record and adjudicate anew rights on the issues properly presented.'" *Knickerbocker*, 601 N.W.2d at 50–51 (alteration in original) (citation omitted). "In equity cases, especially when considering the credibility of witnesses, the appellate court gives weight to the fact-findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

## III. Property Division

Clinton claims the property division was not equitable. "[C]ourts equitably divide all of the property owned by the parties at the time of divorce except inherited property and gifts received by one spouse." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). Property is divided "in an equitable manner in light of the particular circumstances of the parties." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). "An equitable distribution of marital property, based upon the factors in [section] 598.21(5), does not require an equal division of assets." *In re Marriage of McDermott*, 827 N.W.2d 671, 682 (Iowa 2013) (quoting *In re Marriage of Kimbro,* 826 N.W.2d 696, 703 (Iowa 2013)). We ordinarily will not disturb the district court's ruling unless it fails to do equity. *See In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998).

**A.** Clinton first assails the parties' stipulation. He states that although the record shows the parties reached an agreement and the stipulation was read into the record, he never actually agreed to the stipulation. He points out that the stipulation did not include all of the parties' assets, as noted in Monica's rule 1.904(2) motion.

A stipulation "is a contract between the parties." *In re Marriage of Jones*, 653 N.W.2d 589, 593 (Iowa 2002). It is not binding on the court, however, as the court must "determine 'whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues.'" *Id.* (citation omitted). "[O]nce the court enters a decree, the stipulation, as a practical matter, has no further effect." *Id.* at 594. The provisions of the dissolution decree, not the stipulation, determine the parties' rights and responsibilities. *Id.*

The district court stated in a post-trial ruling, "The Decree of Dissolution was the decision of the Court and not an agreement reached by the parties." We do not agree that the court did not rely on the agreement of the parties, primarily because neither party testified, and the only witness was the expert appointed by the court. And the agreement read into the record was adopted by the court. But in our de novo review, we determine the division of assets is equitable. As to Clinton's claim that he was pressured into the stipulation, we are unable to glean such from the record. Clinton, an attorney, was represented by counsel and present during the time period the agreement of the parties was read into the record.

**B.** In his post-trial motions, Clinton asked the court to consider additional financial documents that were not presented at the time of the dissolution hearing. He asserts that based on these documents, the parties had total assets of $141,722 and total liabilities of $121,660, giving them net worth of $20,062. He contends the court should have divided this amount equally between the parties, which would be $10,031 to each party. He asks that any amount Monica received in excess of $10,031 should be returned to him.

But Clinton's argument is based on Exhibits RR and ZZ, which he submitted in conjunction with his post-trial motions. The court ruled these exhibits were not admissible because they had not been submitted at the time of the dissolution hearing. On appeal, we consider only the evidence before the district court. *See* Iowa R. App. P. 6.801; *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded.").

Clinton's complaints that the record was incomplete are due in large part to his failure to provide all of the financial information requested from him at that time. Watson testified he asked Clinton several times for financial information, which Clinton refused to provide. *See In re Marriage of Hanson*, 475 N.W.2d 660, 663 (Iowa Ct. App. 1991) ("Since it is apparent it was [the husband's] machinations and deviousness which created the very problem he complains of, he may not now assert the trial court's ruling is inequitable."). And the agreement of which Clinton now complains awarded him all of the marital assets with the exception of a van, one-half the value of a bank account, and the daycare business. Based on our

close review of the record, we determine there was an equitable division of the assets. We affirm the division of property in the parties' dissolution decree.

## IV. Child Support

**A.** Clinton contends that the district court miscalculated his child support obligation. He claims the court improperly imputed income to him of $75,000 per year. At a post-trial hearing, Clinton testified he expected to earn about $52,000 or $53,000 in 2022 from the non-profit organization. In addition, Clinton had some income from his law practice and his work for a technology service provider.

"In applying the child support guidelines, the court must determine the parents' current monthly income from the most reliable evidence presented." *In re Marriage of Hart*, 547 N.W.2d 612, 615 (Iowa Ct. App. 1996) (citing *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991)). In determining each parent's income, the court carefully considers all of the relevant circumstances. *In re Marriage of Miller*, 532 N.W.2d 160, 162 (Iowa Ct. App. 1995).

During the post-trial hearing, the court stated:

> Okay. I'm relying upon his income being at $75,000. There is nothing that's going to change by receipt of those exhibits that have been submitted, so they are in evidence, but the weight of the evidence is as I have indicated.[7] I'm not making a change with respect to Clint's income based upon anything else that's been filed. I'm relying upon the information I had at the time of trial. If he chooses to present some type of modification some time after April of next year after the deadline for the filing of his tax returns, if he does that, we'll schedule it for hearing, I'll consider it at that time.

---

[7] At the second post-trial hearing, the court accepted Exhibit XX but stated "I'm not going to consider it for purposes of making any changes as a result of this hearing." The court also accepted Exhibits 100 and 101, which were child support worksheets.

The evidence showed Clinton set his own income from the non-profit organization. In addition to that income, Clinton had the ability to earn additional income from his law practice and his work providing technology services. And while Clinton had the opportunity to provide evidence about his income at the dissolution trial, he did not do so. We find the court properly determined Clinton's income was $75,000 per year.

**B.** Clinton asserts the court improperly determined the amount Monica was spending on health insurance for the children. At the time of the dissolution decree, the children were insured through the Hawk-I program. After Monica obtained new employment, she had family health insurance available to her, which she testified would cost $962.66 per month. She stated she did not believe the children would still be eligible for the Hawk-I program based on her increased income.

In the court's order filed on October 13, Monica was ordered to provide continued health insurance for the children. The court found the current cost of the health benefit plan through Monica's employer was $1015 per month. The court considered this figure in setting Clinton's child support obligation at $714.95 per month for the three children.

Exhibit 29 is a letter from Monica's employer showing that for family coverage, the cost for medical insurance is $962.66 per month, dental insurance is $67.34 per month, and vision insurance is $30.90 per month. Monica's portion of the coverage is paid by her employer. The total of the amounts separate from the cost of Monica's coverage is $1060.90 per month, which is more than the

amount the court used to calculate child support. The evidence does not support Clinton's argument to reduce his child support obligation.

**C.** In the second post-trial ruling, the court stated, "[T]he Court will require that any future determination of Clint's income or financial status shall be determined by James Watson. Mr. Watson's expertise will be required considering any modification action filed by Clint in the future." Clinton claims the court improperly delegated its ability to determine his income to Watson. We agree with Clinton on this issue. Modification of a child support obligation is possible once there has been a substantial change in circumstances. Iowa Code § 598.21C(1) (2022); *In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998). This can include "[c]hanges in the employment, earning capacity, income, or resources of a party," and "[c]hanges in the number or needs of dependents of a party." Iowa Code § 598.21C(1).

We conclude the district court was without authority to order additional requirements beyond the statutory mandate. We modify the decree to eliminate the James Watson requirement to any future modification.

## V. Spousal Support

Clinton contends the court should not have ordered him to pay spousal support to Monica. He argues that based on her new employment with the school district, where she earns $44,266 per year, she can support herself without spousal support.

In her cross-appeal, Monica asserts the court should not have reduced the amount of spousal support she receives. In the original dissolution decree, Clinton was ordered to pay $1500 per month in spousal support for sixty months. Monica

claims the court should have kept the spousal support award at this amount, rather than reducing it to $500 per month for sixty months. Monica states she is required to continue her education to renew her teacher's license and obtain an early childhood endorsement for her job. She was enrolled at Northwestern College in online classes and expected to complete her program by December 2023.

"Our cases repeatedly state that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). An award of spousal support may come within the categories of rehabilitative, reimbursement, traditional, transitional, or a hybrid of these types. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 539–40 (Iowa 2022). Transitional spousal support has been recognized by the Iowa Supreme Court. *Id.* at 542.

The court considers the statutory factors in Iowa Code section 598.21A(1)[8] and makes an equitable award of spousal support. *See id.* at 538. We will disturb

---

[8] The factors found in section 598.21A(1) are as follows:

    a. The length of the marriage.

    b. The age and physical and emotional health of the parties.

    c. The distribution of property made pursuant to section 598.21.

    d. The educational level of each party at the time of marriage and at the time the action is commenced.

    e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

    f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that

the district court's award of spousal support "only when there has been a failure to do equity." *Gust*, 858 N.W.2d at 406 (citation omitted).

Following the second post-trial hearing, the court found Monica should receive rehabilitative spousal support. The court ruled:

> The Court in considering the property settlement and in considering spousal support finds that originally in the Decree of Dissolution, Monica was awarded $1,500 per month in spousal support. The Court also believed that Monica would receive $50,000 in the property settlement with the remainder of the $25,000 due two years. Based upon the Order for Reconsideration, Monica has only received $35,000 and will not receive the balance for two (2) years. Furthermore, Monica is incurring expenses related to tuition to bring her teaching license up to date. Clint also continues to earn considerably more than Monica. Monica also testified that as of the date of this hearing, she had yet to receive any kind of paycheck and was living on residual money left in her daycare account and loans from her parents. As such, the Court finds that Monica should continue to receive spousal support, however, said spousal support shall be reduced to $500 per month for a period of sixty (60) months.

The parties have not shown the district court's award of spousal support is inequitable, and therefore, we do not disturb the court's award. *See id.* Although Monica is now earning a greater income from her employment with the school district, she must complete certain education requirements for that job. Rehabilitative alimony is "'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby

---

enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

creating incentive and opportunity for that spouse to become self-supporting.'" *In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) (citation omitted).

Monica is required to have a limited period of re-education or retraining for her employment. Clinton has the ability to earn about $75,000 per year and he has the ability to pay spousal support of $500 per month for sixty months. And Monica has not demonstrated a need for a greater spousal support award. We affirm the award of spousal support.

## VI. Attorney Fees

Monica seeks attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (quoting *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006)). Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted).

Both parties appealed and neither party was wholly successful concerning the issues they raised on appeal. We determine each party should be responsible for his or her own appellate attorney fees.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**