# IN THE COURT OF APPEALS OF IOWA

No. 17-0327
Filed September 13, 2017

IN RE THE MARRIAGE OF CAROL A. TINKER
AND GEOFFRY A. TINKER

Upon the Petition of
CAROL A. TINKER,
        Petitioner-Appellee,

And Concerning
GEOFFRY A. TINKER,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J.

Dryer, Judge.


        Husband appeals from the district court's entry of a qualified domestic

relations order. **REVERSED AND REMANDED.**



        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro,

PLC, Cedar Falls, for appellant.

        Carol A. Tinker, Waterloo, appellee.



        Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

This case involves a challenge to a qualified domestic relations order (QDRO). The QDRO at issue divided an account in the Iowa Public Employees' Retirement System (IPERS) pursuant to the decree dissolving the marriage of Geoffry and Carol Tinker. On appeal, Geoffry contends the QDRO impermissibly modified the dissolution decree in directing Geoffry to select a particular IPERS benefit option, designate Carol as the beneficiary of his preretirement death benefit, and name Carol as a contingent annuitant. Our review of equitable proceedings is de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Morris*, 810 N.W.2d 880, 885 (Iowa 2012) (stating review of QDRO is de novo); *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001).

The relevant facts are few. The parties married in 1995 and divorced in 2016. Some of the issues related to the dissolution of the parties' marriage were resolved by pretrial stipulation and other issues were resolved following trial to the district court. One of the issues resolved by pretrial stipulation was the division of Geoffry's and Carol's respective retirement accounts.

With respect to Geoffry's IPERS account, the pretrial stipulation provided:

> The parties further agree that the proceeds of Geoffry's IPERS plan shall be divided pursuant to the *Benson* formula, with Carol receiving a fraction of Geoffry's IPERS plan equal to the following: 50% of the gross monthly or lump sum distribution payable to the member, multiplied by a 'service factor' where the numerator is the number of quarters covered during the marriage period of 12/23/95 through the date the Decree is entered in this matter and the denominator is the member's total quarters of service covered by IPERS and used in calculating the member's distribution amount.

At trial, the district court stated it accepted the stipulation and would incorporate it into the terms of the decree. With respect to Geoffry's IPERS account, the decree provided:

> Carol is awarded an interest in Geoffry's IPERS plan benefits. Pursuant to the *Benson* formula, Carol shall receive an amount or amounts equal to fifty percent (50%) of a fraction ("service factor") of the gross monthly or lump sum distribution(s) payable to Geoffry under the plan. The numerator of the fraction ("service factor") shall be the number of quarters covered during the marriage, not to exceed the denominator of the fraction, which shall be Geoffry's total quarters of service covered by IPERS and used in calculating Geoffry's distribution amount. Carol's attorney shall prepare a Qualified Domestic Relations Order transferring this interest in Geoffry's IPERS plan benefits to Carol, which shall be approved as to form by Geoffry's attorney and presented to the court for approval within 90 days of the date this decree is filed.

The parties were unable to agree to the language of the QDRO. Specifically, Geoffry objected to proposed language requiring him to select a particular benefit distribution option, requiring him to designate Carol as the beneficiary of the preretirement death benefit, and requiring him to designate Carol as the contingent annuitant of the retirement benefit. On Carol's motion to approve the QDRO, the district court resolved the dispute in favor of Carol, concluding the proposed language accomplished the intent and purpose of the decree. Geoffry timely filed this appeal.

The relevant inquiry is the intent of the district court. "A stipulation and settlement in a dissolution proceeding is a contract between the parties." *In re Marriage of Jones*, 653 N.W.2d 589, 593 (Iowa 2002). However, "the parties' stipulation is not binding on the court, as the court has the responsibility to determine 'whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested

issues.'" *Id.* (citation omitted). Consequently, once the court enters a decree adopting the stipulation, "[t]he decree, not the stipulation, determines what rights the parties have." *Id.* at 594. "Therefore, in ascertaining the rights of the parties after final judgment, it is the intent of the district court that is relevant, not the intent of the parties." *Id.*

In determining the intent of the district court, we look to the language of the decree. "A dissolution decree is construed like any other written instrument." *In re Marriage of Brown*, 776 N.W.2d 644, 650 (Iowa 2009). The decree must be construed in accord with its evident intention as expressed in the "four corners" of the document. *Id.* Here, the plain language of the decree provides the IPERS benefit shall be divided in accord with the service factor percentage method set forth in *Benson*. *See, e.g., In re Marriage of Heath-Clark*, No. 15-0525, 2016 WL 2753779, at *4 (Iowa Ct. App. May 11, 2016) (explaining the service factor percentage method). Nothing in the decree expresses any intent to require Geoffry to select a particular retirement benefit option. Nothing in the decree expresses any intent to provide for preretirement death benefits. Nothing in the decree expresses any intent Carol be named a contingent annuitant to the retirement benefit.

We cannot infer from the absence of any provision in the decree addressing these issues that the district court intended to award Carol these extra benefits, despite the district court's subsequent statement to the contrary. The preretirement death benefit, the benefit option to be selected, and the survivorship rights as a contingent annuitant are significant property rights that must be bargained for or otherwise explicitly resolved at trial by the district court.

*See Morris*, 810 N.W.2d at 887 (noting these rights related to retirement benefits are separate and subject to negotiation). Here, the only issue addressed in the decree was the percentage of Geoffry's IPERS benefit Carol was to receive. The actual benefit package Geoffry will receive was left unaddressed and thus left to Geoffry's election. *See In re Marriage of Tekippe*, No. 16-1297, 2017 WL 510985, at *2 (Iowa Ct. App. Feb. 8, 2017).

Because the plain language of the decree addresses only the proper division of Geoffry's IPERS benefit and does not in any way limit or constrain Geoffry's ability to elect his IPERS benefit, the QDRO in this case was an impermissible modification of the property division or an impermissible serial final judgment. *See In re Marriage of Thatcher*, 864 N.W.2d 533, 538 (Iowa 2015) (considering whether bifurcated decree was a reviewable final judgment). We thus vacate the district court's order approving the proposed QDRO. We remand this matter for presentation and approval of a QDRO implementing the express terms of the decree of dissolution of marriage.

**REVERSED AND REMANDED.**