# IN THE COURT OF APPEALS OF IOWA

No. 21-0726
Filed May 25, 2022

IN RE THE MARRIAGE OF KURT E. STEPANIAK
AND JACQUELINE S. STEPANIAK

Upon the Petition of
KURT E. STEPANIAK,
    Petitioner-Appellee,

And Concerning
JACQUELINE S. STEPANIAK,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows,

Judge.


A former wife appeals declaratory judgment adopting former husband's

interpretation of a spousal support obligation. **AFFIRMED.**


Jean Z. Dickson and Barbara K. Wallace of Betty, Neuman & McMahon,

P.L.C., Davenport, for appellant.

Wendy S. Meyer of Lane & Waterman LLP, Davenport, for appellee.


Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**TABOR, Presiding Judge.**

Jacqueline Stepaniak appeals a declaratory judgment interpreting the spousal support provision in the decree dissolving her marriage to Kurt Stepaniak. Both the 2008 decree and our 2009 decision in the dissolution appeal contemplated that after his retirement Kurt would pay Jacqueline alimony equaling the difference between $5000 and her monthly income from his pensions and social security.[1] But when she received a lump-sum payment from one of his pensions in 2020, Kurt stopped paying support, considering his obligation suspended for thirty-three months. Jacqueline sought a declaratory judgment to enforce the decree. The court ruled in Kurt's favor, giving him "credit" for the lump-sum payment against his spousal support obligation.

Because we strive to give effect to the decree, we agree with the district court's sentiment that given the payout under the pension's terms, we can't "put the genie back in the bottle." By our reading, the decree and our decision intended for proceeds from the pension to offset Kurt's support obligation. And the district court's ruling honors that intent.

## I. Facts and Prior Proceedings

Kurt and Jacqueline divorced in 2008 after twenty-six years of marriage. During their marriage, Kurt worked as corporate counsel for several firms, including Bosch and KONE, Inc. He held one pension plan from Bosch and left KONE with two pensions. Jacqueline has a master's degree in social work. But for most of the marriage she cared for the parties' children who are now adults.

---

[1] *In re Marriage of Stepaniak*, No. 08-1552, 2009 WL 1499559, at *3 (Iowa Ct. App. May 29, 2009).

To distribute their assets, the district court largely incorporated the parties' joint stipulation into the decree. Important to this appeal, the court divided Kurt's pensions from Bosch and KONE using the *Benson* formula.[2] The district court also awarded Jacqueline spousal support of $8500 per month until October 2014.[3] Starting then, the court ordered: "Kurt shall pay Jacqueline $5,000 per month on the first of each month as spousal support until the first to occur of (1) Jacqueline's marriage or death; or (2) Kurt's death. This amount of spousal support shall be reduced by the amount of social security Jacqueline receives when Kurt retires."

Kurt moved to amend, asserting that upon his retirement Jacqueline would not need spousal support because she would receive about $500 per month from his Bosch pension and an estimated $3600 per month from his KONE pension plan, as well as social security. In September 2008, the court modified the spousal support provision to account for those projected monthly amounts:

> Beginning on October 1, 2014, Kurt shall pay Jacqueline $5,000 per month on the first of each month as spousal support until the first to occur of (1) Jacqueline's marriage or death; (2) Kurt's death; or (3) Kurt's retirement. At Kurt's retirement, Jacqueline shall receive her share of Kurt's Bosch pension and his Kone pension as well as social security. If these amounts do not total $5,000, then Kurt shall pay Jacqueline enough money monthly to ensure she receives $5,000 monthly after his retirement. If these three benefits . . . total more than $5,000 per month, then Kurt shall not be required to pay any additional monthly spousal support to Jacqueline after his retirement.

---

[2] The *Benson* formula is "a method used to divide a defined benefit plan for the purposes of marital property settlement." *In re Marriage of Miller*, 966 N.W.2d 630, 634 n.2 (Iowa 2021) (citing *In re Marriage of Benson*, 545 N.W.2d 252, 254–55 (Iowa 1996) (en banc)).

[3] Jacqueline planned to return to graduate school to earn a master's degree in public administration, which she anticipated completing by her fifty-eighth birthday in October 2014.

In January 2009, Kurt moved to enter qualified domestic relations orders (QDROs) on the divided pension plans. The court ordered the plan administrators to split the funds and award Jacqueline her share as an alternate payee. Her share was to be awarded as her sole and separate property. The court entered QDROs for the KONE pension plans in February 2009.

Meanwhile, Kurt appealed the decree, and Jacqueline cross appealed. Our court modified spousal support, finding a reduction to $7500 per month was equitable up until October 2014. After that time, the court ordered:

> Kurt shall pay alimony to Jacqueline in the amount of the difference between $5000 and Jacqueline's income from Kurt's pensions and social security. Jacqueline's income from alimony, pensions, social security, and work should allow her to maintain a standard of living comparable to that enjoyed during the marriage . . . . All alimony payments will end upon Kurt's death, Jacqueline's remarriage, or Jacqueline's death.

*Stepaniak*, 2009 WL 1499559, at *3. In setting her total income at $5000 per month, we said, "Once Jacqueline's standard of living is assured, there is no reason for Kurt to provide further alimony, even if he is financially capable." *Id.*

Kurt retired in 2019. In April 2020, KONE notified Jacqueline that Kurt's pensions would be paid out to her in lump sums. Her share of the pension relevant here (KONE, Inc. Supplemental Executive Retirement Plan (Defined Benefit SERP)) was $85,113.23 (minus $2000.16 in FICA taxes). KONE estimated that the actuarial equivalent monthly single life annuity benefit would have been $411.84.

Jacqueline received the lump sum by wire transfer in August 2020. That same month, Kurt stopped paying support—reasoning his obligation was

suspended until May 2023 because the lump-sum payout replaced his contributions to Jacqueline's income.

In October, Jacqueline used the lump-sum payment to purchase a life annuity from Edward Jones financial services with a monthly payout of $368.76. She then moved for declaratory judgment asking the court to enforce Kurt's monthly support obligation of $2225.71.[4]  She also asked for attorney fees.

Kurt responded, seeking to suspend his spousal support obligation:

[Kurt] requests that [Jacqueline's] receipt of $85,311.21 of SERP pension benefits in August of 2020 be immediately credited to [his] spousal support obligation.  Absent the payment, [he] would have owed [her] $2,594.47 per month in spousal support.  The amount received, $85,311.21 divided by $2,594.47 gives [him] 32.88 months of credit (85,311.21/2594.47 = 32.88) and extending this out commencing in August ([his] last spousal support payment was July of 2020), means that [his] spousal support obligation should be suspended until May 1, 2023.

Kurt argued that his proposal did equity between the parties:

[Jacqueline] has the full benefit of the lump sum payment and therefore requiring [Kurt] to continue to pay as if [Jacqueline] had not received the full payment is not equitable and conflicts with the terms of the Decree which mandate that [Kurt] receive credit to his monthly spousal support obligation for all pension benefits received by [Jacqueline].

The district court agreed with Kurt, stating

There simply is no way to put the genie back in the bottle in this case.  The court is left to determine the best way to honor the

---

[4] She calculated that amount by using this chart:

| | |
|---|---|
| *Total monthly income:* | $5000 |
| less: | |
| Bosch pension | 449.80 |
| KONE Employees' pension | 696.43 |
| Social security under Kurt | 832.30 |
| Social security under Jacqueline | 427.00 |
| Edward Jones annuity | 368.76 |
| *Monthly support obligation:* | $2225.71 |

decree and the court of appeals opinion to assure that Jacqueline receives the $5,000 per month in spousal support contemplated therein. The best and most fair way to accomplish this is to adopt [Kurt's] request for declaratory judgment. Therefore, the lump sum payment of $85,113.23 shall work as a credit against [his] spousal support obligation until May 1, 2023. At that point, [Kurt] shall continue to pay spousal support under the formula contemplated in the court of appeals opinion.

As a perceived silver lining for Jacqueline, the court noted:

[Kurt] correctly points out that by receiving a lump sum payment [Jacqueline] acquired a benefit of lasting value that could remain even after her death. This would not be true of the annuity originally contemplated. The fact that she chose to then take that money and invest it in a different annuity as opposed to some other form of investment is of no relevance to the Court's determination. It does, however, enhance the difficulty, if not impossibility, of attempting to return these parties to square one.

Finally, the court determined both parties should pay their own attorney fees.

Jacqueline appeals.

## II. Scope and Standard of Review

In declaratory judgment actions, "[o]ur scope of review is governed by how the case was tried in the district court." *In re Mt. Pleasant Bank & Tr. Co.*, 426 N.W.2d 126, 129 (Iowa 1988). Both sides agree that the district court sat in equity, so our review is de novo.[5] *See In re Marriage of Miller*, 966 N.W.2d 630, 632 (Iowa 2021).

A declaratory judgment action allows the court to

declare rights, status, and other legal relations whether or not further relief is or could be claimed. . . . The declaration may be either affirmative or negative in form or effect, and such declarations shall have the force and effect of a final decree. The existence of another

---

[5] The parties also agree that this is an action for declaratory judgment, not a proceeding for modification. It would be error to treat it as a modification proceeding. *See Vrban v. Levin*, 392 N.W.2d 850, 852 (Iowa Ct. App. 1986).

> remedy does not preclude a judgment for declaratory relief in cases
> where it is appropriate.

Iowa R. Civ. P. 1.1101. We construe a dissolution decree to reflect its "evident intention." *In re Marriage of Sylvester*, 412 N.W.2d 624, 628 (Iowa 1987) (citation omitted). In determining the rights and responsibilities of the former spouses, "it is the intent of the district court that is relevant, not the intent of the parties." *In re Marriage of Tinker*, 902 N.W.2d 819, 822 (Iowa Ct. App. 2017) (citation omitted).

## III. Analysis

### A. Declaratory Judgment

Jacqueline contends the district court ignored our court's intent when we set Kurt's post-retirement alimony by starting at $5000, then subtracting her monthly income from his pensions and social security. *Stepaniak*, 2009 WL 1499559, at *3. She insists, "[i]n setting forth the monthly amount that Jacqueline was to receive from Kurt's KONE pension and by referring to it as 'income,' the intention of the court of appeals was that Jacqueline would receive her benefits from Kurt's pensions as monthly payments and not as a lump-sum payment." She also asserts the QDRO showed the parties' intent that she select the form of benefit she preferred.[6]

Kurt counters that Jacqueline could have paid herself a monthly stipend from the lump-sum payout. Instead, she chose to invest in a life annuity that returned less per month than the KONE annuity would have paid. Kurt argues he should not be penalized for that choice. He also faults her for not electing to

---

[6] Although she implies in her brief that Kurt used his role as senior vice president at KONE to implement the changes to her alleged detriment, she disavowed that accusation at the motion hearing.

receive the pension as an annuity when she had the chance. He agrees with the district court that taking a credit against his support obligation is the fairest way to treat the lump-sum payment. He reads our decision as intending to "ensure the parties were treated as equitably as possible," not for Jacqueline to receive income each month.

We start with his argument that Jacqueline could have elected to receive the KONE disbursement as an annuity. The record is confusing on that point. When Jacqueline asked KONE's human resources representative and its legal counsel why her share was paid in a lump sum, they said the plan underwent changes after entry of the QDRO. According to KONE, the QDRO applied to the then-existing plan, The KONE, Inc. Defined Benefit SERP. That plan was split into two plans: (1) the KONE Inc. 401(k) Defined Contribution Supplemental Executive Retirement Plan (DC SERP) and (2) DB SERP. The DC SERP plan was payable as a lump sum, to which Jacqueline raises no objection. The DB SERP is not a tax-qualified retirement plan but one that is "exempt from most portions of the Employment Retirement Income Security Act of 1974 and instead subject to special tax rules under Section 409A of the Internal Revenue Code."

KONE further advised based on the plan's terms and the relevant code

> [the plan] must pay Ms. Stepaniak's benefits in a lump sum payment, and cannot pay Ms. Stepaniak's benefits in the annuity form that you request.
> . . . .
> Although the DB SERP does allow a participant to elect an alternative payment form in certain situations with respect to the DB Benefit, Mr. Stepaniak already elected a lump sum payment and terminated employment, triggering required payment in this elected form under the DB SERP and Code Section 409A [of the Internal Revenue Code]. Given this scenario, neither the law [n]or the terms

of the DB SERP allows Ms. Stepaniak to elect payment of her DB Benefit in a single life annuity at this time.

Recall that the parties' amended decree was filed September 2008 but the QDRO was not entered until February 2009. The QDRO says that where there is "conflict between the terms of this [o]rder and the terms of the [p]lan, the terms of the [p]lan shall prevail." But the pension plan went through several changes between 2008 and Kurt's retirement. Back in November 2008, Kurt filed an election for the KONE pension plan to receive the funds as a lump sum. At the time, the plan's terms provided for a life annuity, absent a different election. The plan was amended in December 2008 and in 2015. The December 2008 amendment made the default a lump-sum payment. The 2015 plan stated, "The default payment form under the Plan is an immediate lump sum," but any elections "not submitted and approved by the Company by December 15, 2008 are subject to the regular payment form." So it is not clear to us that Jacqueline had a separate interest on which to make her election before the QDRO was entered, which would have been too late under the 2015 plan amendments. Kurt made the affirmative election for a lump sum after the decree, but before the QDROs and before our decision on appeal.

At any rate, the parties did not petition for modification. If they had, we could decide whether the unexpected form of disbursement was a substantial change in circumstances. And, if so, what new support arrangement would be equitable for both parties. *See, e.g., In re Marriage of Masterson*, 453 N.W.2d 650, 654 (Iowa Ct. App. 1990). But a declaratory judgment action is different. Our task is to

declare the parties' rights under the existing decree. Iowa R. Civ. P. 1.1101. So here, we strive to give effect to the intent of the decree and our 2009 decision.

Despite her disappointment, Jacqueline's share of the KONE DB SERP pension funds cannot be distributed as a $411.84 monthly annuity. Instead, she received a lump sum of $85,113.23, minus $2000.16 in FICA taxes. As she argues in this appeal, Jacqueline sought to repeat the intended distribution scheme by reinvesting the lump sum into the Edward Jones account that paid a monthly annuity of $368.76. But as Kurt notes in response, her investment in a different annuity is irrelevant to our interpretation of the decree.

The decree and our decision premised Kurt's post-retirement alimony obligation on Jacqueline's need to meet living expenses of $5000 per month. Those orders expected Kurt to make up the difference between that $5000 demand and Jacqueline's income from social security and pension payments. (That difference was $2594 per month.). Kurt decided to apply the lump-sum pension payment as front-loaded "credit" against his ongoing support obligation. The district court endorsed that method of fulfilling his obligation. Granted, that method deviated from Jacqueline's expectations. But her expectations do not govern our interpretation of the decree or our 2009 decision. *See Tinker*, 902 N.W.2d at 822. Nothing in the language of the decree or appellate decision prohibits using the lump-sum pension payment to offset Kurt's monthly obligation in the same way the $411.84 annuity would have reduced his payments for the duration of alimony award.[7] So we affirm the district court.

---

[7] As noted in the declaratory judgment ruling, after May 1, 2023, Kurt must resume paying spousal support "in the amount of the difference between $5000 and

### B. Attorney Fees

Jacqueline asks for trial and appellate attorney fees. But there is no statutory authority for awarding attorney fees in a declaratory judgment action. *In re Marriage of McGinley,* 724 N.W.2d 458, 464 (Iowa Ct. App. 2006) (noting chapter 598 contains no provision for an attorney-fee award in a post-dissolution action seeking declaratory judgment over the parties' rights and responsibilities under the decree). Besides, she did not succeed at trial or on appeal. So we decline to award fees. Costs on appeal are divided equally between the parties.

**AFFIRMED.**

---

Jacqueline's income from Kurt's [other] pensions and social security." *Stepaniak,* 2009 WL 1499559, at *3. "All alimony payments will end upon Kurt's death, Jacqueline's remarriage, or Jacqueline's death." *Id.*