# IN THE COURT OF APPEALS OF IOWA

No. 21-2007
Filed October 5, 2022

**IN RE THE MARRIAGE OF LORI A. HILL**
**AND MARSHALL R. HILL**

**Upon the Petition of**
**LORI A. HILL,**
        Petitioner-Appellee,

**And Concerning**
**MARSHALL R. HILL,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Woodbury County, Steven J.

Andreasen, Judge.


        Marshall Hill appeals the entry of an amended order for military retired pay.

**AFFIRMED.**


        Janell K. Bock of Goosmann Law Firm, PLC, Sioux City, for appellant.

        Amanda Van Wyhe of Van Wyhe Law Firm & Mediation Center, PLC, Sioux

City, for appellee.


        Heard by Bower, C.J., Tabor, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**DOYLE, Senior Judge.**

Marshall Hill appeals the entry of an amended order for military retired pay (MRPDO). He contends the order impermissibly modifies the property-division provisions of the decree dissolving his marriage to Lori Hill. Finding the order consistent with the decretal court's intent, we affirm.

**I. Background Facts and Proceedings.**

Marshall and Lori were married for twelve years. The property divided in their 2013 dissolution decree includes pension benefits Marshall is entitled to receive from his employment with the United States Postal Service and the Iowa Air National Guard. Marshall worked for both employers throughout the parties' twelve-year marriage. He was employed by the post office full-time and worked part-time for the Iowa Air National Guard. At some point, he took leave from the post office to work full-time for the military. The decretal court noted he had recently resumed full-time with the post office. Because Marshall was not fully vested at the time of dissolution and the value of his retirement benefits was unknown, the district court awarded Lori a percentage of each pension, to be calculated under the method as explained in *In re Marriage of Benson*, 545 N.W.2d 252, 255–57 (Iowa 1996), when Marshall retires. The decree states that "[u]nder the *Benson* formula, Lori is entitled to one-half of Marshall's monthly benefits multiplied by a fraction of which the numerator is 12 and the denominator is the number of years covered by the plan up to maturity (retirement)." The decree directs Lori's attorney to "prepare Qualified Domestic Relations Orders [QDRO] that are acceptable to the plans' administrators and, under the *Benson* formula,

award Lori one-half of the military and postal retirement benefits accrued during the parties' 12 years of marriage."

In August 2015, two years after entry of the dissolution decree, the parties consented to and signed proposed orders related to Marshall's federal employee and military retirement benefits. The MRPDO orders:

> The Petitioner [Lori], former spouse, is awarded a percentage of the member's [Marshall] disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is 12 years (the length of time the parties were married and the Respondent was in the military), divided by the member's total number of years of service in the military prior to retirement.

It also provides the district court with

> continuing jurisdiction to modify the retirement benefit payments or property division[1] specified herein or award damages, as it determines equitable, if the Respondent [Marshall] should waive military retired pay in favor of disability payments or take any other action either actively or passively (such as receipt of severance pay, bonuses or an early out payment, or waiver or conversion of any portion of his military service into state or federal civil service time without the consent of the Petitioner [Lori], or the election to take combat related special compensation) which reduces the amount the Petitioner [Lori] is entitled to receive.

And it states that if either party violates the order, "the court may award attorneys' fees to the other (non-violating) party."

In October 2015, Lori received a letter from the Defense Finance and Accounting Service (DFAS) acknowledging receipt of her application for payment of a portion of Marshall's retired pay. The DFAS cautioned Lori that it could later

---

[1] We note that a "provision in the pension order purporting to retain jurisdiction to modify the property division in the dissolution decree . . . is not enforceable." *In re Marriage of Erlandson*, 973 N.W.2d 601, 607 (Iowa Ct. App. 2022).

reject her application and require a clarifying order if Marshall's duty status changed.

In November 2020, the DFAS informed Lori that it required a clarifying order that calculates her share of Marshall's retired military pay based on reserve points rather than years of service. "[T]he Reserve National Guard Retirement System accounts for time spent in the military in terms of points." *Villars v. Villars*, 277 P.3d 763, 766 (Alaska 2012).[2]

In June 2021, Lori moved for entry of a modified QDRO[3] "as required by DFAS which gives the numerator of the retirement calculation formula in terms of [Marshall]'s retirement points." Lori stated that the information she had about Marshall's military service history and reserve points[4] only showed the reserve points Marshall accrued through September 2012 and he failed to respond when she tried to obtain current information. She asked the court to require that Marshall

---

[2] These retirement points are based on a member's activities "and do not necessarily accrue based solely on the length of service or reserve duty service." *Woodson v. Saldana*, 885 A.2d 907, 910 (Md. Ct. Spec. App. 2005). Marshall testified that he receives an annual point credit summary two or three months after the anniversary of his enlistment. The most current information at the time of the hearing showed Marshall has accrued 6085 service points during his thirty years of service. Marshall receives fifteen points each year for his service in the Iowa Air National Guard. He also receives one point each day he is on active duty. The number of service points Marshall earns each year fluctuates, ranging from 65 on the low end to a high of 366.

[3] "[M]any attorneys and courts use the term QDRO to refer to any qualified order. This usage is a mistake, for other types of qualified orders are needed to obtain disbursement from other types of plans. In particular, a QDRO is not sufficient to authorize payment of military retirement benefits . . . [which] requires its own unique type of qualified order." *Villars*, 277 P.3d at 766 n.1 (alterations in original) (quoting 2 Brett R. Turner, *Equitable Distribution of Property* § 6:2, at 8 (3d ed. 2005)). *See also Jones v. Jones*, No. 03-20-00417-CV, 2021 WL 4173887, at *4 (Tex. App.—Austin Sept. 15, 2021).

[4] "Reserve points" and "retirement points" are used interchangeably throughout the litigation.

produce the documentation requested by the DFAS and enter a new MRPDO that gives the numerator of the retirement calculation formula in terms of Marshall's retirement points, as the DFAS required. She also asked that Marshall reimburse her for attorney fees and costs.

After a hearing, the district court entered an amended order awarding Lori

a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is the total number of reserve points accrued for the member from October 2001 through July 31, 2013[5] (the length of time the parties were married and the Respondent [Marshall] was in the military) divided by the member's total number of reserve points at the time of retirement or when the pension distribution amount is calculated by the military.

**II. Amended MRPDO.**

Marshall challenges the amended MRPDO. He contends that the amended MRPDO does not comply with the provisions of the decree and thus results in an impermissible modification of the property distribution. We review his claims de novo. *See In re Marriage of Morris*, 810 N.W.2d 880, 885 (Iowa 2012).

"Under Iowa law pensions are characterized as marital assets, subject to division in dissolution actions just as any other property." *Benson*, 545 N.W.2d at 255. The division of such property is not subject to modification. *See* Iowa Code § 598.21(7) (2021). But an order directing a pension plan to pay retirement benefits to a former spouse "is not itself a property settlement, but is merely a method of effectuating the property division contained in a dissolution decree and may be modified later without affecting the finality of the underlying decree." *In re Marriage of Veit*, 797 N.W.2d 562, 564 (Iowa 2011). Because the district court

---

[5] Marshall accrued 3081 retirement points during the marriage.

retains authority to interpret and enforce its prior decree, *see Morris*, 810 N.W.2d at 886, the question is whether the amended MRPDO conforms to the provisions of the decree related to the division of Marshall's military pension.

Here the decree awarded Lori 50% of Marshall's military retirement benefits that accrued during the marriage. Although the decree and the original MRPDO calculate that award using Marshall's years of service, the DFAS will not accept an MRPDO using years of service as a numerator. The DFAS instead directs the parties to obtain a clarifying order that calculates Lori's benefits based on Marshall's reserve points. Because Marshall's reserve points accrue differently than years of service, he claims that Lori will receive a greater share of his pension if her benefit is calculated under the amended MRPDO.

Although the total number of reserve points will remain unknown until his retirement, Marshall calculated Lori's benefit under each method using a hypothetical retirement date of September 2020.[6] His calculations show that Lori would receive about $139 more per month under the calculation using reserve points than she would receive under the calculation using years of service. Marshall claims that substituting reserve points for years of service in the calculation differs from the decree and thus impermissibly modifies the property division.

---

[6] Marshall testified at the November hearing that he was required to retire at age sixty, some eight years and five months after the date of the hearing. He testified his health was good and he planned on staying in the military until he was sixty— "I will as long as I can." He also testified his military retirement benefits terminate upon his death. If he died prior to retirement, Lori would not be entitled to any part of his military pension.

Iowa appellate courts have not addressed whether the marital portion of retirement benefits earned by military reservists or Guard members should be calculated on the basis of time rather than points. A Maryland court noted:

> Other courts and commentators that have specifically considered this question have concluded that the marital portion of such benefits must be based on retirement points. *See, e.g.*, *Faulkner v. Goldfuss,* 46 P.3d 993, 1003 (Alaska 2002) ("[W]here the value of retirement benefits is not directly related to the length of employment—such as when retirement benefits will be determined by the number of points earned as a result of the nature and frequency of the service rendered—the coverture fraction should be modified so that the numerator becomes the number of points earned during the period of coverture, and the denominator becomes the total number of points earned"); *Bloomer v. Bloomer,* 927 S.W.2d 118, 121 (Tex. [App.] 1996) ("[The] trial court should have characterized [reservist's] military retirement benefits by comparing his points accrued while married to the total accrued points"); *In re Marriage of Beckman,* 800 P.2d 1376, 1379–80 (Colo. [App.] 1990) ("'Use of a simple years of service computation rather than recognition of the point system will, in some situations lead to inequitable conclusions. The greatest potential for distortion of the marital share of the benefit occurs in situations, where the member of the military retirement system switches from regular component to reserve component service'") (quoting W. Troyan, "Procedures for Evaluating Retirement Entitlements Under Non–ERISA, Retirement Systems for Marriage Dissolution Actions," *in* 3 J.P. McCahey, ed., *Valuation & Distribution of Marital Property* § 46.34(1) (1990)); [*In re Marriage of*] *Poppe,* 158 Cal. Rptr. 500, 503–04 [(Cal. Ct. App. 1979)] ("[T]he basis upon which apportionment was made, years of service during the marriage before separation compared to 'qualifying' years in service, bears no substantial rational relationship to the amount of the pension" because the amount of reservist's retirement benefit was a function of the total points earned for various activities, rather than simply his length of service).

*Woodson*, 885 A.2d at 913; *accord Hasselback v. Hasselback*, No. 06AP-776, 2007 WL 549461, at *2–4 (Ohio Ct. App. Feb. 22, 2007) (finding "that in an instance such as this where the value of the retirement benefit is not directly related to the length of employment, but rather is dependent on the number of points earned during service, the coverture fraction should be modified to reflect

the number of points earned during the marriage and the total number of points earned, rather than reflect the number of years of service during the marriage and the total number of years of service"). While the time-basis *Benson* formula is an appropriate mechanism to determine the marital portion of retirement benefits in most cases, it does not work here. We agree with the courts cited above that when a military member's retirement pay is not strictly a function of the length of military service, the appropriate formula—and formula mandated by the DFAS—is retirement points earned during the marriage divided by the total retirement points earned. That is the formula the district court utilized here in modifying the MPRDO. But does the modification impermissibly alter the decretal property division? We think not.

To interpret the dissolution decree, we consider the intent of the district court. *See In re Marriage of Tinker*, 902 N.W.2d 819, 821 (Iowa Ct. App. 2017). "In determining the intent of the district court, we look to the language of the decree." *Id.* at 822. As with any written instrument, we construe the decree "in accord with its evident intention as expressed in the 'four corners' of the document." *Id.* The plain language of the decree provides that Lori be awarded one-half of the military benefits "*accrued* during the parties' 12 years of marriage." (Emphasis added.) Furthermore, the decree ordered the QDROs be "acceptable to the plans' administrators." It is apparent the district court did not have the DFAS points formula available to it when drafting the decree. As a result, the court utilized the *Benson* method. And so, the *Benson* formula was reflected in the original MRPDO. Much to everyone's chagrin, the *Benson* formula is not acceptable to the DFAS.

After the hearing, the district court concluded that it was the decretal court's intent to award Lori "one-half of all military pension benefits that accrued during the marriage." We agree. The reserve points Marshall accrued during the marriage accurately reflect the military retirement benefits he accrued during the marriage. His years of service do not. *See Beckman*, 800 P.2d at 1379–80. So, using points rather than years in the division formula does not conflict with, but follows, the decretal court's intent to equally divide the military benefits accrued during the marriage. We therefore conclude there is no impermissible modification of the property division. We affirm the district court.

**III. Appellate Attorney Fees.**

Both parties request an award of their appellate attorney fees. Such an award rests in our discretion and is based on the merits of the appeal, the parties' needs, and their ability to pay. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). After considering the appropriate factors, we decline to award either party appellate attorney fees. The parties are responsible for their own attorney fees. Court costs are taxed to Marshall.

**AFFIRMED.**